ROBERT BENJIE WATSON, MINOR, BY HIS NEXT FRIEND, ROBERT E. WATSON, v. PATRICK MEYERS STALLINGS.

(Filed 3 May, 1967.)

**1. Bill of Discovery § 4—**

Where plaintiff examines defendant adversely prior to trial, the defendant is entitled to introduce the record of his own examination at the trial. G.S. 1-568.24(a).

**2. Appeal and Error § 20—**

A party is not entitled to except to matters relating to an issue answered in his own favor.

**3. Automobiles § 16—**

The requirement that a person entering a public highway from a private road or drive must yield the right of way to vehicles on the public highway applies to a person riding an animal as well as to a person driving a motor vehicle. G.S. 20-156(a); G.S. 20-171.

**4. Negligence §§ 1, 16—**

In determining negligence, the standard is always the conduct of a reasonably prudent person or the standard prescribed by statute, and although the standard is constant, the degree of care which a reasonably prudent man exercises, or should exercise, varies with the exigencies of the occa-

sion, and, in an action involving a collision with a boy riding a pony, the age, experience, capacity and knowledge of the boy are "exigencies of the occasion" to be considered in determining whether he exercised the care of a reasonably prudent boy under the circumstances.

**5. Automobiles §§ 42m, 46; Negligence § 16— Instruction on contributory negligence of minor held without error.**

Plaintiff, when eleven years old, was struck by defendant's vehicle at the intersection of a rural paved road and a farm road when plaintiff rode his pony into the intersection from the farm road. The court correctly charged that negligence on the part of plaintiff was to be measured by his age and ability to discern and appreciate the circumstances of danger, and then charged that the statutory requirement that a person entering a public highway from a private drive yield the right of way to vehicles along the highway applied to the rider of a pony, and that if the defendant had satisfied the jury by the greater weight of the evidence that plaintiff failed to keep a reasonably proper lookout or failed to yield the right of way to defendant in entering the highway from a private road without exercising for his own safety that degree of care commensurate with his age and capacity, that such conduct on the part of plaintiff would constitute negligence. *Held:* The charge is free of prejudicial error when construed contextually, and is not subject to the contention that it placed on plaintiff the same degree of care as a mature person operating a motor vehicle.

**6. Trial § 51—**

Motion to set aside the verdict as being contrary to the greater weight of the evidence is addressed to the sound discretion of the trial court.

APPEAL by plaintiff from *Hall, J.,* September 1966 Civil Session of JOHNSTON.

Minor's action by next friend to recover damages allegedly caused by the negligence of defendant in which the pleadings raised issues of negligence, contributory negligence and damages.

Evidential facts sufficient to an understanding of the questions for decision on plaintiff's appeal are stated below.

On Saturday, September 21, 1963, about 3:20 p.m., in Johnston County, plaintiff (Benjie), aged eleven years and nine months, was riding his pony in a southerly direction on a farm road approaching its intersection with Rural Paved Road No. 2374; and defendant was operating his Pontiac car in a westerly direction on No. 2374 approaching its intersection with said farm road. This intersection is approximately one-half mile west of the Town of Pine Level. Plaintiff and his pony and defendant's car collided in or near the center of said intersection. Plaintiff sustained serious and permanent injuries, including the loss of his left leg, and his pony was killed.

Prior to the tragic accident Benjie and Bobby Holt, aged ten years, had been riding their ponies on country roads "all around

out from Pine Level." Benjie had had his pony for two or three years. He rode him "just about every day." His pony was "real gentle" and had never given Benjie any trouble. The pony was kept at the house of Benjie's grandfather, "a quarter of a mile from where the collision occurred."

Benjie's testimony relates primarily to the nature and extent of his injuries and suffering. At trial, he was fourteen and in the ninth grade. His grades were A's and B's. He made good grades before the accident. Dr. Hubert M. Poteat, his surgeon and friend, testified: "He's got more guts than any patient I've ever seen. . . . Then he returned to school and went back to all the activity he could do. He's something, I'll tell you that. He's a great kid. He had quite a remarkable recovery and most of it is between his ears, because he wanted to. I have seen him since this artificial limb has been fitted on him. He and I are both great horsemen. He can ride a horse better than I can right now."

Apart from testimony relating to his injuries and to facts narrated above, Benjie testified the last thing he remembered before he "came to" in the hospital was that he and Bobby had started to go home and had "stopped at the house where the spigot was and . . . watered the ponies."

Bobby Holt testified as follows: He and Benjie, after riding up in the field, had stopped at a house and watered their ponies. Coming down the farm road, his pony was directly behind Benjie's pony. The ponies were galloping, "a slow gallop, not very fast," as they approached the intersection. His pony, when "about 30 feet" from the road, "turned to the left and stopped and started eating grass, and Benjie's pony went straight ahead." Benjie "kept on galloping down front" and "continued to gallop on out to the road." About five seconds after his pony stopped and started to eat grass, he (Bobby) heard the tires of a car "squeal" and then "this crash" and "looked around." He did not see the accident. When it occurred, he was looking at the head of his pony. After the collision, he got off his pony and led her to defendant's car. Benjie was lying on the paved portion of the road, "almost in the middle of this intersection," and the pony was lying on the road. He and Benjie intended to turn left at the intersection and go towards Pine Level.

There was evidence tending to show the following: The paved portion of No. 2374 is twenty-two feet wide. On each side there is a dirt shoulder approximately six feet wide. The unpaved farm road has "a very wide entrance." Extending north from No. 2374, it narrows to thirty feet and then to twenty feet. No. 2374, the farm road and the land north of No. 2374 and east of the farm road are of sub-

stantially the same elevation. Proceeding in a westerly direction thereon, No. 2374 is straight for a distance of approximately 400 feet before reaching its intersection with the farm road.

The evidence was in sharp conflict as to the height and density of the growth, consisting principally of broomstraw and weeds, in the area north of No. 2374 and east of the farm road, and as to whether it was sufficient to obstruct defendant's view of a pony and rider approaching said intersection on the farm road.

Plaintiff's evidence included testimony to the effect this growth "was approximately two or three or three and a half feet high," that it "wasn't thick," but was "sparse"; that a motorist traveling in a westerly direction along No. 2374 could see through this growth anything that was higher than "about three feet" from the base of the farm road; that the back of Benjie's pony was around four and a half feet high; and that the top of Benjie's head from the ground when he was astride the pony was at least six feet. Defendant testified the height and density of this growth was such that he could not see the pony and rider until they came out from the farm road (referred to at times as the dirt road or path) into the area of the intersection. Defendant's evidence included the following testimony of the investigating State Highway Patrolman: "From the curve, the growth in the field, weeds and broomstraw, obstructed your view of the dirt road. The grass and the broomstraw in the field would obstruct your vision of the dirt road as you continued down this road and approached the dirt road. The density of it was quite thick."

Defendant testified in substance: His home was at Pilot, about five miles east of Zebulon. This Saturday afternoon, he and his brother (then in the Service) "had no purpose for coming to Johnston County other than just riding around." They were proceeding on their right side of No. 2374 from Pine Level towards Smithfield, at a speed of 30-35 miles per hour, "listening to a football game." When he first saw the pony, it was coming out of the farm road or path, "running," and was 8-10 feet from the north edge of the hard surface. The pony appeared to be coming out of the path "at a gallop." His "guess" was that he was then "30 or 40 feet" from the farm road or path. He applied his brakes immediately and turned to his left. His tires skidded when he applied his brakes. When his car was veering to the left, the pony was making a left turn and heading towards him. The impact occurred when the pony was "somewhere in the vicinity of the center line." The right front of his car struck Benjie's left leg. Only his left front wheel had crossed the center line at the point of impact. His car stopped "just a matter

of a few feet from the point of impact." At that time, it was headed at an angle to the left. The left front wheel was on the shoulder and the right front wheel on the hard surface. Beyond the car, Benjie, who was knocked clear of the pony, was on the left side of the road, his leg severed. (Note: Defendant's brother, using his belt, applied a tourniquet to Benjie's left leg, "up around the thigh region.") Beyond Benjie, the pony, dead, was lying in the center of No. 2374. Defendant testified: "It was just a second from the time the pony appeared in my view until the impact."

The State Highway Patrolman testified, in substance, that skid marks leading to defendant's car began in the right lane for westbound traffic, veered to the left across the center line and then more directly to the left shoulder.

The jury answered the negligence and contributory negligence issues, "Yes," and did not reach the issues relating to damages. Judgment for defendant, in accordance with the verdict, was entered. Plaintiff excepted and appealed; and on appeal sets forth six assignments of error.

*Spence & Mast for plaintiff appellant.*
*Smith, Leach, Anderson & Dorsett for defendant appellee.*

BOBBITT, J. Whether the evidence was sufficient to warrant the submission of the first issue and the jury's finding in favor of plaintiff thereon is not presented. The judgment from which plaintiff appeals is based on the jury's answer to the contributory negligence issue.

Prior to trial, plaintiff examined defendant adversely as provided in G.S. Chapter 1, Article 46. At trial, defendant did not testify. He offered in evidence the record of his testimony at said adverse examination. Plaintiff's objection thereto was overruled and he excepted. Assignment of Error No. 2, based on this exception, is without merit.

G.S. 1-568.24(a) provides: "Upon the trial of the action or at any hearing incident thereto *any* party may offer in evidence the whole, but, if objection is made, not a part only, of any deposition taken pursuant to this article, but such deposition shall not be used as evidence against any party not notified of the taking thereof as provided by G.S. 1-568.14." (Our italics.)

Earlier statutes relating to the examination of parties, G.S. 1-568 through G.S. 1-576, Volume 1, General Statutes of North Carolina of 1943 (previously codified as C.S. 899-907, inclusive), were repealed by Session Laws of 1951, Chapter 760. G.S. 1-571 (previously

C.S. 902) provided in part: "The examination shall be taken and filed by the judge, clerk, or commissioner, as in case of witnesses examined conditionally, and may be read by either party on the trial." Under this statutory provision, essentially the same in this respect as G.S. 1-568.24(a), it was held that a party who was examined adversely was entitled to introduce in evidence at trial the record thereof. *McGraw v. R. R.*, 209 N.C. 432, 184 S.E. 31; *Beck v. Wilkins-Ricks Co.*, 186 N.C. 210, 119 S.E. 235, and cases cited.

Plaintiff assigns as error extended excerpts from the court's instructions to the jury.

The instructions set forth in the excerpts on which Assignments Nos. 4 and 6 are based relate to legal principles pertinent to the first (negligence) issue. Although these instructions appear to be in accord with our decisions, plaintiff is in no position to complain of error, if any, therein, since the first issue was answered in his favor. *Anderson v. Office Supplies*, 236 N.C. 519, 73 S.E. 2d 141, and cases cited.

Assignment No. 3 is based on the following excerpt: "Another section of the statute, 20-156, provides in part that the 'Driver of a vehicle entering a public highway from a private road, or drive, shall yield the right of way to all vehicles approaching on such public highway,' and that statute would apply to the driver of an animal, that is the rider of a pony, as well as to the driver of a motor vehicle, and under that statute it would be the duty of a person driving a horse, or riding a horse, or driving a motor vehicle, who is coming out of a private driveway onto a main highway, to yield the right of way to vehicles on the main highway, and it would be the duty of such a person to use reasonable care, to look to see if there is any approaching traffic, and a failure to do so would be negligence. It is the duty of a driver of an animal, or a vehicle, coming out of a private driveway on the public highway, as I told you, to stop and to yield the right of way to the motorist who is on the main-traveled highway." Plaintiff asserts as error "that the Court charged upon the infant plaintiff riding on his pony the same duty of care as a person operating a motor vehicle."

The quoted instruction, in respect of the duty under G.S. 20-156(a) of a motorist entering a public highway from a private road or drive, is in accord with our decisions. *Equipment Co. v. Hertz Corp.* and *Contractors, Inc., v. Hertz Corp.*, 256 N.C. 277, 286, 123 S.E. 2d 802, 809; *Gantt v. Hobson*, 240 N.C. 426, 82 S.E. 2d 384; *Garner v. Pittman*, 237 N.C. 328, 75 S.E. 2d 111. G.S. 20-171 provides: "Every person riding an animal or driving any animal drawing a vehicle upon a highway shall be subject to the provisions of

*this article* applicable to the driver of a vehicle, except those provisions of the article which by their nature can have no application." (Our italics.) Both G.S. 20-156 and G.S. 20-171 are provisions of Article 3 of Chapter 20 of the General Statutes.

Prior to the quoted instruction, the court had charged the jury with reference to the second (contributory negligence) issue as follows: "In this case, all the evidence tends to show that at the time of this incident the minor plaintiff was only eleven years of age and I instruct you that there is a *prima facie* presumption that a child between the ages of seven years and fourteen years is incapable of contributory negligence, but this presumption may be overcome. It is rebuttable by evidence that the child in fact was capable of contributory negligence. Now, negligence on the part of a child is to be measured by his age and his ability to discern and appreciate the circumstances of the danger. He is not chargeable with the same degree of care as an experienced adult, but is only required to exercise such prudence as one of his years may be expected to possess. A child must exercise that degree of care commensurate with the child's knowledge, age and capacity and experience, and the failure to do so would be negligence and if a proximate cause, it would be contributory negligence." This instruction is in substantial accord with our decisions. *Wooten v. Cagle,* 268 N.C. 366, 150 S.E. 2d 738, and cases cited.

In determining negligence, the standard is always the conduct of a reasonably prudent person. When a statute prescribes a standard, the standard so prescribed by the General Assembly is absolute. *Bondurant v. Mastin,* 252 N.C. 190, 196, 113 S.E. 2d 292, 296, and cases cited. Although the standard is constant, "the degree of care which a reasonably prudent man exercises, or should exercise, varies with the exigencies of the occasion." *Raper v. McCrory-McLellan Corp.,* 259 N.C. 199, 204, 130 S.E. 2d 281, 284, and cases cited. Thus, the standard of care for the rider of a horse or pony entering upon a public highway from a private road is constant. In applying the standard to the facts of this case, Benjie's age, experience, capacity and knowledge are "exigencies of the occasion" to be considered in determining whether he exercised the degree of care a reasonably prudent boy of his age, experience, capacity and knowledge should and would have exercised under the same or similar circumstances.

With reference to the excerpt to which Assignment No. 5 relates, plaintiff asserts "the Court charged the minor plaintiff with the same duty of care as a person operating a vehicle under his own

control." It is noted there was no evidence that the pony was not at all times under Benjie's control.

In this excerpt, the court, after referring again to the presumption that plaintiff was incapable of contributory negligence, instructed the jury "if the defendant . . . has further satisfied you by the greater weight of the evidence that the plaintiff failed to keep a reasonably proper lookout, or failed to yield the right of way to the defendant in entering a public highway from a private road, or that he rode the pony out into the highway without exercising for his own safety that degree of care commensurate with his age and capacity, that such conduct on the plaintiff's part would constitute negligence, and if the defendant has further satisfied you by the greater weight of the evidence that such negligence of the plaintiff in any one or more of these respects was a proximate cause, or one of the proximate causes of the collision and resulting injuries and damages, it would then be your duty to answer the second issue, 'Yes.' If the defendant has failed to so satisfy you by the greater weight of the evidence, it would then be your duty to answer that issue, 'No.' "

When the charge is considered contextually, we think the court's instructions made it plain that (contributory) negligence on the part of Benjie was to be determined on the basis of whether on this occasion he exercised the degree of care a reasonably prudent boy of his age, experience, capacity and knowledge should and would have exercised under the same or similar circumstances. Having instructed the jury to this effect, as quoted above, continuous repetition was unnecessary.

In Assignment No. 1, plaintiff asserts as error the denial of his motion to set aside the verdict as being contrary to the greater weight of the evidence. Judge Hall, in the exercise of his discretion, denied the motion. There was ample evidence to support the verdict as to the second issue. No abuse of discretion having been shown, the assignment is without merit.

No error.