NOAH H. KEY AND BURLENE KEY MOORE, ADMINISTRATORS OF THE ESTATE OF ASTOR COLON KEY, v. MERRITT-HOLLAND WELDING SUPPLIES, INC.

(Filed 1 May 1968.)

**1. Appeal and Error §§ 49, 50—**

Error in respect to evidence rulings or portions of the charge relating to an issue answered in appellant's favor is not prejudicial to appellant.

**2. Trial § 37—**

The trial judge is not required to give the contentions of the litigants in his charge, but when he undertakes to state the contentions of one party, he must give the equally pertinent contentions of the opposing party.

**3. Automobiles § 90—**

In an action arising out of a collision which occurred while plaintiff was attempting to make a left turn and defendant was attempting to pass plaintiff's vehicle, where the court reviews extensively the defendant's

contentions that plaintiff was contributorily negligent in violating G.S. 20-154 by turning without signalling and without first ascertaining that such movement could be made in safety, it is prejudicial error for the court to fail to review the opposing contentions of plaintiff which are supported by evidence.

APPEAL by plaintiffs from *McConnell, J.,* September 11, 1967 Civil Session of MOORE.

This wrongful death action grows out of a collision that occurred December 18, 1964, about 12:15 p.m., on N. C. Highway No. 27, in Moore County, North Carolina, between a 1957 Chevrolet truck operated by Astor Colon Key (Key), plaintiffs' intestate, and a 1952 International truck owned by defendant and operated by defendant's agent, Bobby Godwin, in the course of his employment. Key died as a result of injuries caused by said collision.

The only evidence was that offered by plaintiffs. Uncontradicted portions thereof tend to show the facts summarized below.

N. C. Highway No. 27, where the collision occurred, is an asphalt road, with a center line dividing the two lanes of traffic, and runs generally east-west.

Both trucks had been proceeding east in the south (their right) traffic lane, the Chevrolet ahead of the International. For eastbound traffic, approaching the point of collision, No. 27 is straight for 1,500 feet and downgrade. The weather was clear and cold. The pavement was dry.

At the point of collision, a State-owned road, unpaved and unmarked, referred to as Rural Unpaved Road #1493, extended in one direction, north, from No. 27. It was "an unmarked intersection."

The Chevrolet truck, owned by Carlie Wendall Baxter, Key's employer, was loaded with coal. Key was to deliver the coal to a house on said unpaved road.

Defendant's truck, operated by Godwin, was loaded with butane gas tanks or drums.

When the collision occurred, Key was attempting to turn to his left across the north traffic lane and into the unpaved road; and Godwin, then in the north (his left) traffic lane, was attempting to pass. The right front of the International truck struck the front portion of the left side of the Chevrolet truck near the middle of the north lane, and thereafter both trucks went to the south side of No. 27 where the coal truck (Chevrolet) stopped on the shoulder and defendant's truck (International) went farther to the east, crossed the shoulder and went down the embankment. As a result of the collision, No. 27 was covered with debris consisting of coal and of butane tanks or drums.

Plaintiffs alleged Godwin was negligent in several respects, in-

cluding (a) excessive speed, (b) failure to keep a proper lookout, and (c) attempting to pass without giving an audible warning by horn.

Answering, defendant denied Godwin was negligent and, conditionally, alleged Key was (contributorily) negligent in several respects, including (a) failure to keep a proper lookout, (b) failure to yield the right of way to defendant's overtaking vehicle, notwithstanding defendant's driver had signaled his intention to pass, and (c) turning from a direct line of traffic without giving the signal required by law and without first ascertaining such movement could be made in safety.

Issues of negligence, contributory negligence and damages were submitted. The jury answered the negligence issue, "Yes," and answered the contributory negligence issue, "Yes," and left unanswered the issue as to damages. In accordance with the verdict, judgment was entered that plaintiffs recover nothing, that the action be dismissed and that plaintiffs be taxed with the costs.

Plaintiffs excepted and appealed.

*Dock G. Smith, Jr., and John Randolph Ingram for plaintiff appellants.*

*Pittman, Staton & Betts for defendant appellee.*

BOBBITT, J. Since the first (negligence) issue was answered in favor of plaintiffs, errors, if any, in respect of evidence rulings or of portions of the charge pertinent to that issue are harmless. *Wooten v. Cagle,* 268 N.C. 366, 370, 150 S.E. 2d 738, 740, and cases cited; *Watson v. Stallings,* 270 N.C. 187, 192, 154 S.E. 2d 308, 311; *Anderson v. Office Supplies,* 236 N.C. 519, 521, 73 S.E. 2d 141, 142, and cases cited. Decision depends on whether there was prejudicial error in the court's instructions with reference to the second (contributory negligence) issue.

G.S. 1-180 provides that "the judge shall give equal stress to the contentions of the plaintiff and defendant in a civil action, and to the State and defendant in a criminal action." Our decisions establish these propositions: "(A) trial judge is not required by law to give the contentions of litigants to the jury. *S. v. Colson,* 222 N.C. 28, 21 S.E. 2d 808; *Trust Co. v. Insurance Co.,* 204 N.C. 282, 167 S.E. 854. When, however, a judge undertakes to state the contentions of one party, he must give the equally pertinent contentions of the opposing party. *Brannon v. Ellis,* 240 N.C. 81, 81 S.E. 2d 196; *S. v. Kluckhohn,* 243 N.C. 306, 90 S.E. 2d 768; *In re Will of Wilson,* 258

N.C. 310, 128 S.E. 2d 601." Denny, C.J., in *Watt v. Crews*, 261 N.C. 143, 147, 134 S.E. 2d 199, 202.

Plaintiffs assign as error the failure of the court, when instructing the jury with reference to the contributory negligence issue, to review and stress their contentions equally with those of defendant.

Evidence pertinent to the contributory negligence issue includes the following:

T. S. Clark, the investigating State Highway Patrolman, testified that, in their first conversation, Godwin told him he was driving at approximately forty miles per hour when he came up behind the loaded coal truck; that he pulled out to pass it; and that he (Godwin) did not blow his horn. Clark testified that, in a later conversation, Godwin told him the coal truck was going at a slow speed, "about ten or fifteen miles per hour," when he came up behind it; that he (Godwin) told him he blew his horn, put on his (Godwin's) left turn signal to pass, and that as he (Godwin) "got up by the side of Key's truck, it made a left turn into his vehicle"; and that, in response to his (Clark's) question as to whether "he saw any signals or any lights on the back of the truck being operated by Mr. Key," Godwin "stated he did not see a signal."

There was evidence that the speed limit for trucks on this section of No. 27 was forty-five miles per hour, and evidence, consisting of physical facts and oral testimony, from which the jury could find defendant's truck when approaching the scene of collision and at the moment of impact was being operated in excess of this legal limit. There was also evidence that the right front portion of defendant's truck struck the front portion of the left side of the coal truck at the door of the cab and that this impact occurred near the middle of the north traffic lane.

A witness, Clyde Fouchee, testified he was traveling west on No. 27 at a point one-third of a mile away; that he "didn't see the vehicles come together" but "only saw them in the process of colliding, coming together"; and that, when he saw them, "they had already come together." Fouchee testified: "I did not see the coal truck give any signal. I didn't see any signal, I was too interested in looking at the wreck itself."

The portion of the charge in which the court reviewed the contentions of the parties is quoted in full below:

"Now, the defendant contends that the plaintiffs' intestate was negligent in that he failed to exercise due care, as I have heretofore defined for you; that if he had looked, he could have seen the other truck; that he failed to keep a proper lookout, and that he failed to keep his truck under proper control, and, further, that he violated

Section 20-154 of the General Statutes, which the attorneys have read to you, but I will restate it, which requires that 'The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement.'

"The defendant contends that the plaintiffs' intestate made the turn before he ascertained that the same could be made in safety and where other vehicles were involved on the highway; that he did not give a turn signal.

"(The defendant contends that from the testimony of Mr. Clark the defendant's driver said he did not see a turn signal, and from Mr. Fouchee, that he said he did not see a signal as he came across the hill, although the plaintiffs contend that Mr. Fouchee did not have the opportunity to see or did not see the turn signal for other reasons, that he was looking at something else, or looking at the collision, but the defendant contends that from the evidence of Mr. Fouchee and the evidence of the patrolman and the conversation with the driver of the truck, that there was no signal given.)

"(The plaintiffs, of course, contend otherwise.)

"(The defendant further contends that from the evidence on the highway, the tracks which were apparent from the vehicles, that the defendant's truck was in the passing lane and was passing the truck, from the physical evidence there at the scene; that the plaintiffs' intestate's truck was turning into this rural unpaved road at a time when the vehicle of the defendant had already proceeded in the left-hand lane and was attempting to pass. Therefore, the defendant contends on this issue that the plaintiffs' intestate failed to exercise due care, failed to keep his truck under proper control; he failed to keep a proper lookout, and that he failed to see first that the turn could be made in safety, and failed to give a signal as provided under the statute, Section 20-154.)"

Plaintiffs excepted to the portions of the charge enclosed by parentheses.

The court properly instructed the jury the burden of proof was on defendant to establish that Key was contributorily negligent. Defendant's principal contentions with reference thereto were that Key acted in violation of G.S. 20-154 in that he made the left turn without exercising due care to ascertain that the movement could be made in safety *and* without first giving a signal prescribed by said statute of his intention to do so.

The court stated that defendant contended "from the evidence of Mr. Fouchee and the evidence of the patrolman and the conversation with the driver of the truck, that there was no signal given," and that plaintiffs, "of course," contended "otherwise." The only other reference to a contention by plaintiffs is that they contended "Mr. Fouchee did not have the opportunity to see or did not see the turn signal for other reasons, that he was looking at something else, or looking at the collision." The evidence disclosed Fouchee was traveling west, and was one-third of a mile away, when the collision occurred; and that when he first saw the trucks they were "in the process of colliding." Plaintiffs' primary contention was that Fouchee's testimony in this respect should have been disregarded as without probative value on the ground his own testimony disclosed he was not in position to observe whether Key, prior to the collision, had given a left turn signal prescribed by statute.

The court, in referring to defendant's contention that Key failed to give a signal for a left turn, referred to the testimony of the patrolman and of his conversation with Godwin, the driver of defendant's truck, as the basis for the contention. Of course, the patrolman gave no testimony on this aspect of the case except his testimony as to a statement made to him by Godwin. Obviously, Godwin was in position where he saw or should have seen whether Key gave a signal for a left turn. According to the patrolman, nothing was said one way or the other in their first conversation as to whether Key had given a signal for a left turn; and, in their later conversation, Godwin made no statement bearing upon this subject until asked specifically concerning the matter and then answered that he "did not see a signal." This equivocal statement falls far short of testimony that no signal was given. In addition, there was evidence that Key was proceeding slowly as he approached the unmarked intersection. The evidence was amply sufficient to justify contentions based thereon to the effect the jury should not find solely from the equivocal statement attributed to Godwin that Key, now deceased, did not give a signal for a left turn as prescribed by statute.

The court stated defendant contended "from the evidence on the highway, the tracks which were apparent from the vehicles, that the defendant's truck was in the passing lane and was passing the truck, from the physical evidence there at the scene, and that the plaintiffs' intestate's truck was turning into this rural unpaved road at a time when the vehicle of the defendant had already proceeded in the left-hand lane and was attempting to pass." There was ample evidence to support contentions by plaintiffs that Key's truck was being operated slowly as he approached the unmarked intersection;

that Godwin, proceeding at excessive and unlawful speed, overtook the coal truck after it had turned into and was in the north lane; that Godwin did not blow his horn (as to this, the evidence was conflicting) to indicate he would attempt to pass; that the two trucks were not running approximately side by side prior to collision but that Key had made his left turn and was proceeding slowly when the left side of his truck was struck by the front of the International truck. However, none of these contentions were referred to by the court.

We are constrained to hold that the extended review of defendant's contentions relating to the contributory negligence issue and the failure to review plaintiffs' contentions with reference thereto, albeit there was evidence on which to base such contentions, weighed too heavily against plaintiffs. In short, the court inadvertently failed to give equal stress to the contentions of plaintiffs and of defendant.

Since a new trial is awarded on the ground indicated, it is unnecessary to consider questions presented by plaintiffs' remaining assignments of error. These questions may not arise at the next trial.

New trial.