O. H. COCHRAN AND WIFE, EMMA REID COCHRAN; RAY WILSON FURR AND WIFE, PEGGY McALISTER FURR; AND MRS. S. L. SAVAGE (WIDOW) v. CITY OF CHARLOTTE

No. 8026SC244

(Filed 18 August 1981)

1. **Aviation § 2— taking by inverse condemnation—frequency of overflights— competency of the evidence**

    In an inverse condemnation action, the frequency of overflights subsequent to the alleged date of taking was pertinent to plaintiffs' damages, the difference in value of their property immediately before and after the taking, and it was not error to permit introduction of this evidence.

2. **Aviation § 2— inverse condemnation—witnesses' opinion—material interference with use of property**

    In light of (1) evidence that there were no overflights that materially interfered with plaintiffs' use and enjoyment of their properties prior to extension of the runway, (2) absence of evidence to the contrary, and (3) want of a compensable taking absent such direct and immediate interference, admission of plaintiffs' witnesses' opinions as to the value of plaintiffs' properties on the date of alleged taking (1) without overflights and (2) with overflights was not error in an inverse condemnation action.

3. **Aviation § 2; Evidence § 45— inverse condemnation—witnesses' opinion—impact of airport upon surrounding properties**

    In an inverse condemnation action, it was not error for the court to permit expert witnesses to offer their opinions regarding the adverse effect on plaintiffs' properties of extension of an airport runway.

4. **Aviation § 2— inverse condemnation—overflights from new runway**

    In an inverse condemnation action where an October 1965 taking date was alleged, plaintiffs failed to seek amendment to allege a further taking in June 1979, and plaintiffs failed to object to submission of issues setting a taking date of 11 October 1965, plaintiffs limited the scope of their action to the Oc-

Cochran v. City of Charlotte

tober 1965 taking, and the trial court properly excluded evidence of overflights from the opening of a new runway in 1979.

**5. Aviation § 2— instruction to jury—whether inverse condemnation occurred**

An instruction that the jury must be satisfied the flights to and from the airport "were so low and so frequent or regular as to be a direct and immediate invasion of and interference with the use and enjoyment of the plaintiffs' land" that the reasonable market value of plaintiffs' properties was substantially reduced on a certain date, was proper on the issue of whether a taking occurred on that date.

**6. Aviation § 2— instruction to jury—damages due to inverse condemnation**

In an inverse condemnation case, an instruction that plaintiffs' damages would be the differences in the fair market values of their properties as of a certain date with or without jets and other aircraft flying over the properties regularly and repeatedly was a proper instruction as compensation is the difference in value of their properties immediately before and immediately after the taking of the flight easement.

**7. Aviation § 2; Appeal and Error § 49— exclusion of relevant evidence—evidence merely cumulative**

Evidence regarding plane crashes in the vicinity of plaintiffs' property was relevant to the issue of damages in an inverse condemnation case; however, exclusion of this evidence was not prejudicial as similar evidence had been admitted and its effect would have been merely cumulative.

**8. Aviation § 2; Evidence § 41— witness's opinion on effect of noise—invasion of province of jury**

The court did not err in failing to permit "an expert Mechanical and Aerospace Engineer, specializing in the field of Acoustics in Noise and Vibration Control" to express his opinion as to the effect of a taped noise of airplanes on humans as nothing in the record indicated he was better qualified than the jury to draw conclusions from the evidence.

**9. Aviation § 2; Evidence § 15.1— admission of party—too remote to have relevance**

In an inverse condemnation action, the court properly excluded testimony that an assistant airport manager in 1979 said no one could buy one of the houses near the airport unless he moved it at least one mile from the airport as such testimony was too remote to have relevance to takings which occurred in 1965.

**10. Aviation § 2— inverse condemnation—question of taking properly for jury**

In an inverse condemnation case where defendant presented evidence tending to show that no substantial diminution in the value of plaintiffs' properties resulted from overflights, the court properly denied plaintiffs' motion for directed verdict on the issue of a taking.

**11. Aviation § 2— instruction to jury—interest from date of taking**

An instruction to the jury in an inverse condemnation case that, should they find a taking, they were "to add to that amount an award of interest at

the rate of 6% per annum from" the date of the taking to the date of the award was proper.

**12. Aviation § 2— inverse condemnation—judgment description of easements acquired—conforming to the verdict**

The judgment in an inverse condemnation case properly described the easements acquired in terms of (1) frequency of flights, (2) permissible altitude, (3) type of aircraft, and (4) duration; however, by permitting overflights by "heavy aircraft, both jet powered and propeller driven, commercial and military, *of all types*," it precluded a finding of subsequent taking from introduction of new types of aircraft and must be modified to limit the reference to types of aircraft to those shown by the evidence produced at trial.

APPEAL by plaintiffs and defendant from *Griffin, Judge.* Judgment entered 10 October 1979 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 7 October 1980.

Plaintiffs seek compensation for alleged inverse condemnation by defendant, as owner and operator of Douglas Municipal Airport (hereinafter Airport), of flight easements in the airspace over plaintiffs' properties. They alleged that defendant, by adoption of an ordinance on 11 October 1965, established at the southerly end of the Airport's North-South runway, an approach zone for landings and take-offs which passed in close proximity to their properties and permitted flights at elevations as low as 105.24 feet (Cochrans), 121.29 feet (Furrs) and 111.25 feet (Savage) above the ground level of these properties. They further alleged that prior to extension of the runway there was no air traffic in the immediate vicinity of their properties, but that thereafter regular and almost continuous flights in close proximity to their properties disrupted their lives and substantially destroyed the market value of their properties. Defendant answered, essentially denying that compensable takings had occurred.

Plaintiffs offered evidence tending to show enactment of the ordinance, extension of the runway, frequency of flights over their properties for various periods between opening of the extension and trial, and effects of these overflights on their persons and properties. Defendants offered evidence tending to show that the noise level from overflights was substantially lower than plaintiffs' evidence indicated, and that the decrease in market value of the properties was substantially less than plaintiffs' evidence indicated.

Cochran v. City of Charlotte

The jury found that defendant had taken easements over plaintiffs' properties and awarded compensation as follows: Cochrans, $8,100.00; Furrs, $8,600.00; and Savage, $2,200.00. The court entered judgment in accordance with the verdict as to compensation. It further adjudged that defendant was deemed vested, as of 11 October 1965, with perpetual easements over the properties of plaintiffs,[1] and that said easements restrict and encumber said properties

> [b]y permitting the low, regular and frequent flight of heavy aircraft, both jet powered and propeller driven, commercial and military, of all types, (including the resulting noise, jar, vibration, bright lights, smoke and fumes) over said properties in landing on and taking off from [the] North-South Runway . . . at [specified] altitudes.

From the judgment entered, plaintiffs and defendant appeal.

*Justice and Parnell, by James F. Justice, for plaintiffs.*

*Caudle, Underwood and Kinsey, P.A., by William E. Underwood, Jr., for defendant.*

WHICHARD, Judge.

SUMMARY OF LAW ON INVERSE CONDEMNATION OF AVIGATION OR FLIGHT EASEMENTS

For over half a century North Carolina statutes have authorized cities and towns to establish airports[2] and to acquire property for that purpose by exercise of the power of eminent domain.[3] Defendant did not seek, by direct exercise of this power, to condemn flight easements over plaintiffs' properties. Plaintiffs allege, however, that defendant has in fact condemned such easements. Plaintiffs by this allegation claim an

> "inverse condemnation," a term often used to designate "a cause of action against a governmental defendant to recover

---

1. The judgment as set forth in the record on appeal states "over the properties of the *defendants*." (Emphasis supplied.) The obvious intent and the only correct interpretation, however, is to read it as stating "over the properties of the *plaintiffs*."

2. G.S. § 63-2 (1929 Sess. Laws, ch. 87, § 2).

3. G.S. § 63-5 (1929 Sess. Laws, ch. 87, § 5).

the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency."

*Charlotte v. Spratt*, 263 N.C. 656, 662-663, 140 S.E. 2d 341, 346 (1965), *quoting from Jacksonville v. Schumann*, 167 So. 2d 95, 98 (Fla. Dist. Ct. App. 1964). " 'Inverse condemnation is a device which forces a governmental body to exercise its power of condemnation, even though it may have no desire to do so.' " *Hoyle v. City of Charlotte*, 276 N.C. 292, 302, 172 S.E. 2d 1, 8 (1970), *quoting from* Bohannon, *Airport Easements*, 54 Va. L. Rev. 355, 373 (1968).

The advent of the jet age has brought a somewhat novel problem into the area of eminent domain law, that relating to noise from low flights particularly on take-off and landing. The noise problem has been termed "one of the most serious, aggravating problems that we face with regard to the expansion of . . . aviation."

Kettelson, *Inverse Condemnation of Air Easements*, 3 Real Prop., Probate and Trust J. 97 (1968). Affected landowners have sought relief under three legal theories: (1) trespass, (2) nuisance, and (3) compensation for a taking under the power of eminent domain. Of these, eminent domain has emerged as the primary basis of recovery. *Id.*

In *United States v. Causby*, described as "a case of first impression," the United States Supreme Court faced the issue of "whether . . . property was taken within the meaning of the Fifth Amendment by frequent and regular flights of army and navy aircraft over respondents' land at low altitudes." 328 U.S. 256, 258, 90 L.Ed. 1206, 1208, 66 S.Ct. 1062, 1064 (1946). The Court found a compensable taking, stating:

The superadjacent airspace at this low altitude is so close to the land that continuous invasions of it affect the use of the surface of the land itself. We think that the landowner, as an incident to his ownership, has a claim to it and that invasions of it are in the same category as invasions of the surface.

*Causby*, 328 U.S. at 265, 90 L.Ed. at 1212, 66 S.Ct. at 1068. The Court circumscribed the landowner's claim by indicating that

"[f]lights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." *Causby*, 328 U.S. at 266, 90 L.Ed. at 1213, 66 S.Ct. at 1068. It indicated that, given the requisite interference, compensation is measured in terms of loss to the landowner rather than gain to the sovereign. "Market value fairly determined is the normal measure of the recovery." *Causby*, 328 U.S. at 261, 90 L.Ed. at 1210, 66 S.Ct. at 1066. It further indicated that the taking may be total or partial, permanent or temporary; and that the findings must describe with precision the easement acquired, because that interest vests in the condemning sovereign. *Causby*, 328 U.S. at 267, 90 L.Ed. at 1213, 66 S.Ct. at 1069.

In *Griggs v. County of Allegheny*, the Court held that the responsibility of the federal government under the fifth amendment to pay just compensation for a taking resultant upon repeated low flights over property was equally applicable to a county government under the fourteenth amendment. 369 U.S. 84, 7 L.Ed. 2d 585, 82 S.Ct. 531 (1962). It stated:

> We see no difference between [the county's] responsibility for the air easements necessary for operation of the airport and its responsibility for the land on which the runways were built. . . . A county that designed and constructed a bridge would not have a usable facility unless it had at least an easement over the land necessary for the approaches to the bridge. Why should one who designs, constructs, and uses an airport be in a more favorable position so far as the Fourteenth Amendment is concerned? . . .
>
> The glide path for the . . . runway is as necessary for the operation of the airport as is a surface right of way for operation of a bridge, or as is the land for the operation of a dam. . . . Without the "approach areas," an airport is indeed not operable. [The county] in designating it had to acquire some private property. Our conclusion is that by constitutional standards it did not acquire enough.

*Griggs*, 369 U.S. at 89-90, 7 L.Ed. 2d at 589, 82 S.Ct. at 534.

In this jurisdiction "[t]he legal doctrine indicated by the term, 'inverse condemnation,' is well established." *Charlotte v. Spratt*, 263 N.C. 656, 663, 140 S.E. 2d 341, 346 (1965).

Cochran v. City of Charlotte

> Where private property is taken for a public purpose by a
> municipality or other agency having the power of eminent do-
> main under circumstances such that no procedure provided
> by statute affords an applicable or adequate remedy, the
> owner, in the exercise of his constitutional rights, may main-
> tain an action to obtain just compensation therefor.

*Charlotte*, 263 N.C. at 663, 140 S.E. 2d at 346 (emphasis in original
omitted). The North Carolina Supreme Court, in *Hoyle v. City of
Charlotte*, applied the doctrine to the taking of avigation or flight
easements. 276 N.C. 292, 172 S.E. 2d 1 (1970) (Bobbitt, C.J.).[4] The
Court stated that noises and other disturbances from frequent
overflights which substantially and adversely affected the
reasonable market value of plaintiff's property constituted a tak-
ing by defendant of an easement of flight over plaintiff's proper-
ty. *Hoyle*, 276 N.C. at 303, 172 S.E. 2d at 8. This entitled plaintiff
to compensation for the difference in the value of his property im-
mediately before and immediately after the taking. *Hoyle*, 276
N.C. at 307, 172 S.E. 2d at 11. The *date of taking* was thus the ap-
propriate date for determining compensation, and instructions to
determine fair market value *at the time of trial* in assessing plain-
tiff's loss were erroneous. *Hoyle*, 276 N.C. at 307, 172 S.E. 2d at
11.

Finally, when compensation for initial takings of flight
easements has been established, further compensable takings oc-
cur upon increases in operations or introduction of new aircraft
within the easements acquired with consequent decreases in land
values significantly beyond the diminutions resulting from the ini-
tial takings. *See Avery v. United States*, 330 F. 2d 640 (Ct. Cl.
1964).

## DEFENDANT'S APPEAL

[1]   The first issue is whether the trial court erred in permitting
introduction of evidence as to frequency of flights over and in
close proximity to plaintiffs' properties at various times between
adoption of the ordinance establishing the approach zone on 11
October 1965 and commencement of trial in August 1979. We hold
it did not. The frequency of overflights subsequent to the alleged

---

4. The Court noted that it had "obliquely" reached the same holding in
*Charlotte v. Spratt*, 263 N.C. 656, 140 S.E. 2d 341 (1965).

date of taking was pertinent to plaintiffs' damages, the difference in value of their properties immediately before and immediately after the taking. *Hoyle*, 276 N.C. at 307, 172 S.E. 2d at 11. The fact that actual frequency of overflights could not have been known on the date of the alleged taking is insufficient reason to withhold such information when known at time of trial. This information was the best evidence to indicate the extent of interference with plaintiffs' use and enjoyment of their properties. It was thus highly relevant to a determination of the diminution in value of said properties. By direct condemnation[5] of the easements upon adoption of the ordinance establishing the approach zone, defendant could have litigated the issue of plaintiffs' damages when this evidence was unavailable. Its failure to condemn directly left plaintiffs, if they wished compensation for the diminution in value of their properties, the sole alternative of an action for inverse condemnation. Under these circumstances we find no valid or compelling reasons to foreclose to plaintiffs the opportunity to offer that evidence available at time of trial which most accurately defines the nature and extent of the easements taken and which most graphically depicts the consequent diminution in value of their properties.

[2] The second issue is whether the trial court erred in permitting plaintiffs' appraiser witnesses to render opinions as to the value of plaintiffs' properties on the date of the alleged taking (1) without overflights, and (2) with overflights. Defendant complains that the record indicates the runway had been in service since 1937 and had been used by jet airplanes and other large aircraft prior to its extension in 1965; and contends that by allowing expression of an opinion on the value of plaintiffs' properties in 1965 without overflights, the court gave the jury the inaccurate impression that it was not to consider that overflights of plaintiffs' properties predated the alleged taking in 1965.

A compensable taking of a flight or avigation easement does not occur until overflights constitute a *material* interference with the use and enjoyment of property, such that there is substantial diminution in fair market value. As stated in *Causby*, "Flights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the en-

5. G.S. 63-5.

joyment and use of the land." 328 U.S. at 266, 90 L.Ed. at 1213, 66 S.Ct. at 1068. There was no evidence here indicating that pre-1965 overflights interfered in any material way with plaintiffs' use and enjoyment of their properties. To the contrary, one of the plaintiffs, Mr. Furr, testified,

> As to what, if any, interference we had from the overflight of planes landing and taking off on the north-south runway up to July 2, 1965, during the time the runway was 5000 feet long, before it was reopened following the extension in 1965, *we did not have any overflights.* Now, we could see a plane off at a distance from the airport. We knew the airport was there, but *it never did bother us, not a bit at all.*

(Emphasis supplied.) Another plaintiff, Mr. Cochran, responded to a question as to whether he had noise interference on his property prior to opening of the extended runway in 1965 by stating, "No, sir. Not to bother me."

In light of (1) evidence that there were no overflights that materially interfered with plaintiffs' use and enjoyment of their properties prior to extension of the runway, (2) absence of evidence to the contrary, and (3) want of a compensable taking absent such direct and immediate interference, admission of this evidence was not error. Under the evidence adduced and the applicable law, any effect of pre-1965 overflights on the use, enjoyment, and value of plaintiffs' properties was incidental and not sufficiently material to merit exclusion of the proffered testimony.

[3] The third and final issue is whether the trial court erred in permitting plaintiffs' appraiser witnesses to offer their opinions regarding the adverse effect of extension of the runway on plaintiffs' properties. Defendant contends plaintiffs did not establish a foundation for the witnesses' qualifications to offer opinion evidence in that they did not demonstrate the witnesses' familiarity with the history of the impact of this or any other airport upon surrounding properties during a relevant time frame. We disagree.

Witnesses who are experts in a field may offer opinion testimony regarding matters within the area of their expertise. If a witness is better qualified than the jury to form an opinion from

certain facts, his opinion is admissible. 1 Stansbury, North Carolina Evidence § 132 at 425 (Brandis rev. 1973) (hereinafter cited as Stansbury), and cases cited.

> To be an expert the witness need not be a specialist or have a license from an examining board or have had experience with the exact type of subject matter under investigation, nor need he be engaged in any particular profession or other calling. It is enough that, through study or experience, or both, he has acquired such skill that he is better qualified than the jury to form an opinion on a particular subject.

> A finding by the trial judge that the witness possesses the requisite skill will not be reversed on appeal unless there is no evidence to support it or the judge abuses his discretion.

1 Stansbury, § 133 at 429-430 (footnotes omitted) and cases cited.

Evidence here supported findings that the witnesses were experts in real estate appraisal. Further, each appraiser related study and experience which gave him special knowledge and expertise regarding the value of property in the airport area. The first appraiser testified,

> I worked up some land comparables in the area to come up with the value of the land. . . .

> .   .   .   .

> I have made a study of the uses and other characteristics of real estate in the south approach to the north-south runway in connection with the appraisal I have testified about today.

The second appraiser testified, "I have previously appraised damages to properties in the vicinity of Douglas Municipal Airport." The trial court could properly find from this evidence that these witnesses were better qualified than the jurors to render opinions on valuation of the *loci in quo. See, generally Redevelopment Comm. v. Panel Co.*, 273 N.C. 368, 159 S.E. 2d 861 (1968). Any lack of familiarity with surrounding properties and the impact thereon of the airport affected the credibility of these witnesses rather than the admissibility of their opinion testimony. Defendant had ample opportunity on cross examination to attack

the witnesses' credibility. The admission of this opinion evidence was neither error nor abuse of discretion.

PLAINTIFFS' APPEAL

[4]   The first issue is whether the trial court erred in refusing to permit plaintiffs to show an increase in number of overflights from opening, on or about 19 June 1979, of a *new* north-south runway, parallel to the runway extended in 1965 which is the basis of the claims plaintiffs alleged. Plaintiffs contend that in most inverse condemnation cases the time and extent of the taking can be readily established; but that cases involving avigation easements differ, because an increase in operations or the introduction of a new type of aircraft with louder noise characteristics influences the time and extent of the taking. Plaintiffs suggest that by excluding evidence of overflights from opening of the new runway, the court improperly required them to litigate their damages in a piecemeal fashion. They cite the following from *United States v. Dickinson*: "[W]hen the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken'." 331 U.S. 745, 749, 91 L.Ed. 1789, 1794, 67 S.Ct. 1382, 1385 (1947).

In most inverse condemnation cases this evidence would be admissible on the issue of *when* a taking occurred. This case, however, presents no such issue. Plaintiffs alleged that defendant took perpetual flight easements over their properties *as of October 1965*. At no time did plaintiffs seek to amend their complaint to allege a further taking upon opening of the new runway in June 1979. In view of this failure to seek amendment and of defendant's objection, the court had no basis for allowing the evidence on the theory that the issue of a further taking was being "tried by the express or implied consent of the parties." G.S. 1A-1, Rule 15(b). The issues with regard to takings, submitted without objection, were whether defendant had taken flight easements over plaintiffs' properties *on 11 October 1965*. While plaintiffs were not *required* to resort to piecemeal or premature litigation, they also were not prohibited from doing so. By alleging an October 1965 taking date, failing to seek amendment to allege further takings in June 1979, and failing to object to sub-

mission of issues setting a taking date of 11 October 1965, plaintiffs limited the scope of this action to the October 1965 takings. The court thus properly excluded evidence of overflights from opening of the new runway.[6] This evidence would be appropriate in subsequent actions to establish further compensable takings from opening of the new runway.

[5] The second issue is whether the court erred in instructing that takings by defendant over plaintiffs' properties occurred if the evidence satisfied the jury that the flights to and from the Airport "were so low and so frequent or regular as to be a direct and immediate invasion of and interference with the use and enjoyment of the plaintiffs' land . . . [such] that by reason of said overflights the reasonable market value of plaintiffs' property was substantially reduced on October 11, 1965." Again, there was no issue here as to *when* takings occurred. The instruction related to the first issue submitted, *viz., whether* takings occurred on 11 October 1965. Because a taking of an avigation easement occurs when flights over private land directly and immediately interfere with the enjoyment and use of the land such that its fair market value is substantially impaired, the instruction was not erroneous. *United States v. Causby*, 328 U.S. 256, 90 L.Ed. 1206, 66 S.Ct. 1062 (1946); *Hoyle v. Charlotte*, 276 N.C. 292, 172 S.E. 2d 1 (1970).

[6] The third issue is whether the court erred in instructing that plaintiffs' damages would be the differences in the fair market values of their properties as of 11 October 1965, with and without jets and other aircraft flying over the properties regularly and repeatedly. Compensation in avigation easement cases is to be assessed at time of taking. *Hoyle*, 276 N.C. at 307, 172 S.E. 2d at 11. The court thus correctly instructed that the determination should be made as of 11 October 1965, the date of taking alleged by plaintiffs. The compensation to which landowners are entitled is the difference in value of their properties immediately before and immediately after the taking of the flight easement. *Hoyle*, 276 N.C. at 307, 172 S.E. 2d at 11. Thus, the instruction in this

6. We held with reference to the first issue in defendant's appeal, *supra*, that the trial court properly admitted evidence of overflights of plaintiffs' properties between adoption of the ordinance establishing the approach zone on 11 October 1965 and commencement of trial in August 1979. That evidence did not relate to overflights from opening of the new runway in 1979, however.

regard also accords with applicable law and was not in error. Further, by using the words "regularly and repeatedly," the court adequately characterized the evidence relating to frequency of overflights of plaintiffs' properties between adoption of the ordinance and commencement of trial. The record reveals no request for more specific instructions pursuant to G.S. 1A-1, Rule 51(b); and the instructions, as a whole, were in compliance with the requirements of G.S. 1A-1, Rule .51(a). *Redevelopment Comm. v. Stewart*, 3 N.C. App. 271, 164 S.E. 2d 495 (1968).

[7] The fourth issue is whether the court erred in refusing to permit plaintiff Ray Furr to testify regarding plane crashes in the vicinity of his property subsequent to opening of the runway, and regarding his resultant state of mind. Plaintiffs rely primarily on the following, in arguing the testimony should have been admitted:

> There is, unfortunately, no simple litmus test for discovering in all cases *when an avigation easement is first taken by overflights.* Some annoyance must be borne without compensation. [Citations omitted.] The point when that stage is passed depends on a particularized judgment evaluating such factors as the frequency and level of the flights; the type of planes; the accompanying effects, such as noise *or falling objects*; the uses of the property; the effect on values; the reasonable reactions of the humans below; and the impact upon animals and vegetable life.

*Jensen v. United States*, 305 F. 2d 444, 447 (Ct. Cl. 1962) (emphasis supplied).

The court in *Jensen* was enumerating factors to be considered to determine *when the taking of an avigation easement first occurs.* The language from *Jensen* thus is not directly applicable. The excluded evidence was relevant to the issue of damages. The only evidence excluded, however, related to three specific plane crashes in the general vicinity of plaintiffs' properties. Exclusion of evidence regarding specific crashes could not have deprived the jurors of the common knowledge that planes crash, that a high percentage of crashes occurs upon take-offs and landings, and that properties in close proximity to runways are thus more vulnerable to crashes than are other properties in the line of flight. Further, and more importantly, the record contains

evidence as to the diminution in fair market value of plaintiffs' properties and as to the inconvenience, fears and general state of mind of plaintiffs consequent upon the overflights. Additional evidence in this regard would have been merely cumulative in effect, and "[t]he exclusion of cumulative evidence will not be deemed prejudicial unless there is some reasonable likelihood that its admission would have changed the result of the trial." *In re Will of Hall,* 252 N.C. 70, 84, 113 S.E. 2d 1, 11 (1960). In view of the record as a whole, it is unlikely that admission of this evidence would have changed the result of the trial. We therefore find no prejudice to plaintiffs in its exclusion.

[8] The fifth issue is whether the court erred in refusing to admit opinion testimony from plaintiffs' witness, stipulated to be "an expert Mechanical and Aerospace Engineer, specializing in the field of Acoustics in Noise and Vibration Control," as to the effect of the noise impact from overflights on humans in the vicinity of plaintiffs' properties. The witness described his expertise as being "in the area of vibrations and acoustics, which is the science of sound, noise and its effects, ways of generating sound, sound radiation, the response of structures to sound, how to control and predict noise, how to measure noise." Nothing in the record established any special expertise on his part in the field of the effects of noise on humans, and he was neither stipulated nor found to be an expert in that area. The witness testified to sound level readings he had made of aircraft flying over plaintiffs' properties, he explained his measurements, and he played tapes producing the sound of some of these aircraft. Nothing in the record indicates that the witness was better qualified than the jury to draw conclusions from this evidence as to the effects of the noise on humans in the vicinity of the properties affected. The jurors would appear as qualified as the witness to listen to tapes of noise from aircraft and to appraise the plausible effects of that noise on vicinal persons. "[O]pinion [testimony] is inadmissible whenever the witness can relate the facts so that the jury will have an adequate understanding of them and the jury is as well qualified as the witness to draw inferences and conclusions from the facts." 1 Stansbury, § 124 at 388, and cases cited. We find no error in the exclusion of this testimony.

[9] The sixth issue is whether the court erred in refusing to admit testimony from a witness for plaintiffs that in the spring of

1979, at a meeting for the purpose of opening bids on houses defendant was selling which were located near the Airport, the assistant airport manager stated that no one could buy one of the houses unless he moved it at least a mile away from the Airport, because defendant had bought the houses once and did not want to buy them again. Plaintiffs contend the testimony should have been admitted under an exception to the hearsay rule for admissions of a party. The apparent ground is that the statement constituted an admission that defendant had to buy all houses within one mile of the Airport.

Evidence which has no logical tendency to prove a fact in issue is inadmissible. 1 Stansbury, § 77 at 234. This evidence had no logical tendency to prove either a taking from plaintiffs or their resultant damages. It related to a policy of defendant extant in the spring of 1979, a time too remote to have relevance to takings which occurred in October 1965. "[T]he general requirements of relevancy and materiality apply to admissions. Thus a statement by a party is not competent against him unless it can reasonably be interpreted as an acknowledgment of the existence of a relevant fact." 2 Stansbury, § 167 at 9-10 (footnotes omitted) and cases cited. The evidence was properly excluded.

[10] The seventh issue is whether the court erred in denying plaintiffs' motion for a directed verdict on the issue of a taking. Defendant offered evidence tending to show that no substantial diminution in the value of plaintiffs' properties resulted from the overflights. One witness testified, "I don't think the landing and taking off of aircraft in this approach . . . has had any effect at all on the fair market value of properties in the approach." This evidence was sufficient to take the case to the jury on the taking issue, and rendered directed verdict improper. See Hunt v. Montgomery Ward and Co., 49 N.C. App. 638, 272 S.E. 2d 357 (1980), and authorities cited. Further, because the jury found for plaintiffs on this issue, any error in denial of the motion was harmless. See Key v. Welding Supplies, 273 N.C. 609, 611, 160 S.E. 2d 687, 689 (1968); Prevette v. Bullis, 12 N.C. App. 552, 183 S.E. 2d 810 (1971).

[11] The eighth issue relates to the following portion of the charge, to which plaintiffs assign error:

[A] plaintiff is entitled to just compensation, if you find him or her entitled to compensation at all, and I instruct you that should you find all or any of the plaintiffs to be entitled to compensation as of October 11, 1965, you are to add to that amount an award of interest at the rate of 6% per annum from that time to the date of your award.

Two elements of damages are legally cognizable in condemnation cases: (1) compensation for the diminution in fair market value of the property taken; and (2) compensation for any delay in paying for the property once it is taken. *DeBruhl v. Highway Commission,* 247 N.C. 671, 102 S.E. 2d 229 (1958).

Ordinarily, the legal rate of interest, where the condemned property is located, upon the original sum fixed as compensation for the fair market value of the property on the taking date, is considered a fair measure of the amount to compensate the owner for the delay in paying the award, so as to make just compensation.

*DeBruhl,* 247 N.C. at 687, 102 S.E. 2d at 241. The legal rate of interest is six percent. G.S. 24-1. The court instructed in the language of *DeBruhl* and of G.S. 24-1. Its instruction was an adequate declaration of the law as to this aspect of the case. "If a more thorough or more detailed charge was desired it was incumbent upon plaintiff[s] to request it." *Prevette,* 12 N.C. App. at 554, 183 S.E. 2d at 811.

[12] The ninth and final issue relates to the judgment description of the easements acquired. Plaintiffs tendered judgments describing these easements as follows:

a perpetual right and easement for the flight of a similar number of all types of aircraft, including piston and jet passenger aircraft, with similar noise characteristics to those operating at said airport on October 11, 1965 . . . which said right and easement shall be limited to no more than 62 passenger aircraft of all types, of which no more than 18 shall be pure jet during a 24 hour period.

The court declined to enter these judgments, and entered instead a judgment containing the following provision:

IT IS FURTHER ADJUDGED AND DECREED that the defendant . . . be deemed to be vested as of October 11, 1965, with

perpetual easements over the properties of the [plaintiffs][7] and that said easements restrict and encumber said properties as follows:

1. By permitting the low, regular and frequent flight of heavy aircraft, both jet powered and propeller driven, commercial and military, of all types, (including the resulting noise, jar, vibration, bright lights, smoke and fumes) over said properties in landing on and taking off from that North-South Runway at Douglas Municipal Airport known as Runway 18L-36R at the following altitudes:

Cochran — From 225.99 feet and upwards above the ground;

Furr — From 175 feet and upwards above the ground;

Savage — From 232.49 feet and upwards above the ground.

Because the interest taken vests in the governmental entity, judgments in avigation easement cases should describe the easement acquired in terms of (1) frequency of flight, (2) permissible altitude, (3) type of aircraft, and (4) duration. *Causby*, 328 U.S. at 267-268, 90 L.Ed. at 1213-1214, 66 S.Ct. at 1069. As to frequency of flights, the judgment here described the permissible overflights as "regular and frequent." As to permissible altitude, the judgment set forth the distance above plaintiffs' properties at which flights would be allowed. As to type of aircraft, the judgment stated that "heavy aircraft, both jet powered and propeller driven, commercial and military, of all types" would be allowed. As to duration, the judgment described the easements as "perpetual."

Plaintiffs do not complain of, nor is there impropriety in, the entries as to permissible altitude and duration. Plaintiffs do contend, however, that the court erred with reference to frequency of flights and types of aircraft. For reasons set forth below, we decline to disturb the judgment as to the frequency of flights. The court did err with reference to types of aircraft, however; and the

7. See footnote 1, *supra*.

case is thus remanded with instructions for modification of the judgment.

"It is thoroughly settled in law that in all cases tried by a jury the judgment must be supported by and conform to the verdict in all substantial particulars." *Russell v. Hamlett*, 261 N.C. 603, 605, 135 S.E. 2d 547, 549 (1964). The description of the easements thus must conform to the verdict, and the verdict necessarily derived from the evidence presented and the instructions to the jury.

The judgments tendered by plaintiffs would have limited the frequency of flights in the easements acquired to a designated number by passenger aircraft, restricted still further as to jet aircraft. Plaintiffs' evidence, though, indicated that, commencing in July 1965 and continuing to the time of trial, their properties were subjected to regular and repeated low overflights by both jet and propeller driven aircraft taking off from and landing on the runway. It further indicated a steady increase in the number of overflights from 1965 until the time of trial. In defendant's appeal, *supra*, we held this evidence properly admitted. Defendant's evidence also indicated regular and repeated overflights, differing significantly from plaintiffs' only with respect to the increase in their number. The evidence thus was not restricted to the number of overflights on 11 October 1965, nor was the jury instructed to consider only that number. Consequently, the judgment would not conform to the verdict if it restricted the easements acquired to the number of overflights as of that date. The court therefore properly rejected the judgments tendered by plaintiffs.

The description of the frequency of flights permitted as "regular and frequent" comported with the evidence and the instructions on the basis of which the jury reached its verdict. It was thus proper and adequate, though admittedly but necessarily vague in terms of future interpretations of the extent of the easements acquired. If the frequency of flights over the easements acquired increases beyond that reasonably contemplated upon determination of the extent of the takings here, thereby causing substantial further diminution in the values of plaintiffs' properties, subsequent takings will have occurred entitling plaintiffs to additional compensation. *See Avery v. United States*, 330 F. 2d

640 (Ct. Cl. 1964). Future triers of fact must then resolve the extent of the easements taken in each instance, with reference to the record here and to the evidence adduced at the trials of those actions. In view of the evidence and instructions from which the verdict here derived, the judgment in this case, however voluminous or specific, could not obviate that necessity.

The judgment permitted overflights by "heavy aircraft, both jet powered and propeller driven, commercial and military, *of all types*." (Emphasis supplied.) Because it precludes a finding of subsequent takings from introduction of new types of aircraft, this provision is improper. If additional compensation is precluded for substantial further diminution in or total destruction of the values of plaintiffs' properties from introduction within the easements here acquired of overflights by new types of aircraft with different noise and vibration propensities, plaintiffs would be denied their constitutional entitlement to just compensation. *Avery*, 330 F. 2d 640. Consequently, the judgment must be modified to limit the reference to types of aircraft to those shown by the evidence adduced at trial and thus within the contemplation of the jury in reaching its verdict. As with the frequency of flights question, upon assertion of subsequent takings by introduction of new types of aircraft within the easements acquired, future triers of fact must resolve the extent of the easements taken in each instance, with reference to both the record here and the evidence adduced at the trials of those actions.

## RESULT

No error in the trial. Remanded with instructions for modification of judgment.

Chief Judge MORRIS and Judge HEDRICK concur.