Ardell ADAMS, et al.

v.

The UNITED STATES.

No. 428–78.

United States Court of Claims.

May 19, 1982.

---

**8.** *See* Fed.R.Civ.P. 37(b).

Orval C. Harrison, Salt Lake City, Utah, atty. of record, for plaintiffs; Glen E. Fuller, Salt Lake City, Utah, of counsel.

James E. Brookshire, with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D. C., for defendant; Capt. John L. Wittenborn, Washington, D. C., and S. Reed Murdock, U. S. Air Force, Hill Air Force Base, Utah, of counsel.

Before FRIEDMAN, Chief Judge, and KUNZIG * and SMITH, Judges.

* Judge Robert L. Kunzig died February 21, 1982. He participated in the oral argument and agreed to the determination in this case before his death.

## OPINION

SMITH, Judge:

In this case, plaintiffs, owners of 27 tracts of land in the vicinity of Hill Air Force Base, Utah, allege the inverse condemnation by the United States of an avigation easement for the interference with their properties caused by overflights of Air Force aircraft. Trial was held before Trial Judge Browne, who submitted recommended findings of fact and a proposed opinion. The trial judge found that the arrival at Hill AFB of the 388th Tactical Fighter Wing (TFW) during 1976, and the attendant increase in the number and loudness of aircraft operating out of Hill, constituted an additional taking of an avigation easement, beyond that already taken by the base's existence, on certain of plaintiffs' tracts (1, 2, 3, 4, 7, 11, 18, 24, and 25). The trial judge excluded from compensation some tracts (10, 12, 15, 16, 19, and 20) because the State of Utah in 1978 and 1979 had acquired land use easements on them relating to the use of Hill.

The parties' exceptions to the trial judge's report raise three issues for our consideration. Defendant challenges (1) the finding that the arrival of the 388th TFW in 1976 was sufficient to constitute an additional taking, and (2) the trial judge's use of certain reports on aircraft noise, prepared by the Air Force, to establish the existence of a taking. Plaintiffs argue (3) that the easements condemned by Utah were clearance easements and should not preclude recovery for avigation easements taken by the United States.

■ In an order issued this date, we affirm the trial judge on issues (1) and (2) and reverse on issue (3). We also adopt with modifications, but do not print, as the basis for our decision in this case the trial judge's opinion and findings of fact. This opinion explains the reasons for reversing the trial judge on issue (3). We hold that the Utah easements were land use or clearance easements and do not preclude recovery for avigation or overflight easements. The relevant facts are set out in detail in the trial judge's opinion and findings of fact, so we will only sketch out such facts here as are necessary to explain our decision.

The avigation easements which are the subject of this suit were taken in three stages in 1976, as different sections of the 388th TFW arrived at Hill AFB. These easements consisted of overflight of plaintiffs' properties at altitudes of less than 500 feet above ground level (AGL) and the consequent substantial interference, by noise and danger of accident, with plaintiffs' use and enjoyment of their properties.

On January 31, 1976, the State of Utah appropriated state funds to acquire land use easements over some of plaintiffs' properties. These easements were acquired by contract (tracts 10, 19, and 20) in 1978 and by court award (tracts 12, 15, and 16) in 1979. The appropriation act and the condemnation resolution, pertinent parts of which are set out in the appendix, imposed height restrictions on the subject properties and limited development of the properties to certain non-residential uses.

While one purpose (among others) of the easements was undoubtedly to benefit the United States by ensuring a safe flight path for aviators taking off and landing at Hill AFB, the easements accomplished this goal by restricting the uses to which the land could be put and limiting the obstructions (height of structures, smoke, light, or electrical emissions) which might be placed on the land. The resolution clearly stated what the owners could and could not do, but it said nothing about what the Air Force and its aircraft could or could not do. The easements condemned by Utah did not by their terms include a right to overfly plaintiffs' properties.

The Government argues that this is a distinction without a difference. The Utah easements prohibited residential development, and the additional takings alleged here rendered only residential development impossible. The two easements affect the same ultimate real estate value, the argument goes, so to grant recovery from the United States would give plaintiffs double recovery.

There can be no question, however, that there is an important difference between a clearance (land use) easement and an avigation (overflight) easement. The leading authority is Judge Wisdom's opinion in *United States v. Brondum.*[1] A clearance easement limits land use, for example, "the right to cut trees and natural growth to a prescribed height and to remove man-made obstructions above a prescribed height."[2]

An avigation easement may or may not contain provisions dealing with obstructions, but, unlike a clearance easement, in express terms it permits free flights over the land in question. It provides not just for flights in the air as a public highway—in that sense no easement would be necessary; it provides for flights that may be so low and so frequent as to amount to a taking of the property. * * [3]

We consider this point of law settled.[4]

■ The Utah easements, just like the clearance easements in *Brondum*, said nothing about overflights; they merely purported to control the use of land and the height of obstructions upon it. We hold that there is a real and important difference between a clearance easement and an avigation easement and that the prior existence of one does not as a matter of law preclude the possibility of inverse condemnation of the other.

■ Nevertheless, there is much force to defendant's argument that the ultimate value at issue is compensation for the inability to develop these tracts residentially and that to this extent the two kinds of easements overlap. We agree that in determining the amount of compensation, this overlap is an important consideration. Indeed, it may be that in this case the addi-tional compensation due for the avigation easement will be found to be minimal. We certainly do not hold that it will be minimal,[5] but the overlap must be considered to avoid double recovery by plaintiffs. In other words, plaintiffs may recover from the United States only the amount by which the diminution in the value of their property resulting from the avigation easements taken by the United States in 1976 exceeded the diminution in value resulting from the easements obtained by Utah in 1978 and 1979.

■ Of course, prior to any calculation of damages on the Utah easement tracts, the trial judge must decide which of them have in fact been subjected to avigation easements by the United States. If some of those tracts are not overflown frequently by F–4's at less than 500 feet AGL, then they are not entitled to compensation from the United States. The two types of easements are analytically separate, and just as the taking of one does not preclude the separate taking of the other, the taking of one need not include the taking of the other. At the liability stage, the Utah easement tracts are on the same footing as the rest of the tracts.

We conclude, therefore, that as to the tracts for which the State of Utah acquired clearance easements, tracts 10, 12, 15, 16, 19, and 20, the case should be, and by separate order this date is, remanded to the trial division first to determine which tracts have been subjected to an avigation easement by the United States and then to calculate the correct amount of compensation, taking care to limit the recovery to the additional taking *beyond* the Utah easements.

---

1. *United States v. Brondum*, 272 F.2d 642 (5th Cir. 1959). *Accord, Dolezal v. City of Cedar Rapids*, 209 N.W.2d 84, 87, 94–97 (Iowa 1973) (discussion of the distinction).

2. *United States v. Brondum*, 272 F.2d at 644.

3. *Id.*, 272 F.2d at 645.

4. *See* 2 Nichols, The Law of Eminent Domain § 5.781 (3d rev. ed. 1981 & Supp.1981).

5. For example, diminution in value of the residential property already existing on these tracts from noise and risk of accident are not within the scope of the Utah easements and would require additional compensation by the United States beyond that already paid to the owners by Utah. *See Dolezal v. City of Cedar Rapids*, 209 N.W.2d at 94–97.

## APPENDIX

The appropriation for the easements, H.B.No.61, 1976 Utah Laws ch. 31, § 1, reads in pertinent part:

There are certain portions of land on the southern end of the base that are being developed for residential and other uses that are incompatible with the operation of the base in that they lie within an area that is unsafe because of potential aircraft accidents and are hazardous to the health and well-being of the occupants on said land because of the noise generated by aircraft. Therefore, in order to assure the continued operation of Hill Air Force Base as an active military base and to protect the health and safety of the citizens of the State of Utah, the legislature deems it necessary for the state to acquire easements restricting the use of said portions of land and air space above them, the said easements are declared to be for a public use.

The condemnation resolution reads, in pertinent part:

RESOLVED, by the Utah Department of Transportation, hereinafter referred to as the "Department", that it finds and hereby declares that:

The public interest and necessity require the acquisition by the Department, of a restrictive land use easement. * * *

    *    *    *    *    *    *

1. The Condemnee shall not use or permit any use of the land hereinafter described or any of the airspace above said tract of land for any purpose other [than] the following:

A—INDUSTRIAL–MANUFACTURING

(a) Lumber and Wood Products

(b) Furniture and Fixtures

(c) Paper and Allied Products

(d) Printing, Publishing

(e) Chemicals and Allied Products

(f) Rubber and Miscellaneous Plastic Goods

(g) Stone, Clay and Glass Products

(h) Primary Metal Industries

(i) Fabricated Metal Products

(j) Miscellaneous Manufacturing

B—TRANSPORTATION–COMMUNICATIONS AND UTILITIES

(a) Railroad, Rapid Rail Transit

(b) Highway and Street Right of Way

(c) Auto Parking

(d) Communications

(e) Utilities

(f) Other Transportation, Communications and Utilities

C—COMMERCIAL–RETAIL TRADE

(a) Wholesale Trade

(b) Building Materials—Retail

(c) Automotive, Marine

(d) Furniture, Home Furnishings. Retail

D—PUBLIC AND QUASI PUBLIC SERVICES

(a) Cemeteries

E—OUTDOOR RECREATION

(a) Golf Course, Riding Stables

(b) Water Based Recreational

F—RESOURCE PRODUCTION, EXTRACTION AND OPEN SPACE

(a) Agriculture

(b) Livestock Farming, Animal Breeding

(c) Forestry Activities

(d) Fishing Activities & Related Services

(e) Mining Activities

(f) Permanent Open Space

(g) Water Areas

No residential dwellings shall be allowed under any of the above mentioned uses.

Improvements located on the property subject to this easement at the time said easement is executed shall not be required to be removed. Single family dwellings in existence at the time this document is executed shall not be converted into multiple family dwellings.

    *    *    *    *    *    *

4. The Condemnee, his successors or assigns, shall not construct or place or cause to be constructed or placed, any improvement upon the property subject to this easement which will exceed a height of 50 feet for 5:E, and 140 feet for 5:2E.

5. Any use made of this property subject to this easement by the Condemnee, his successors or assigns, shall be such that no smoke, dust, steam or other substance is released into the airspace which would interfere with pilot vision.

6. The Condemnee shall not put said property to a use which will produce light emissions either direct or indirect (reflection) which [w]ould interfere with pilot vision or a use which would produce electrical or other emissions which would interfere with aircraft Communication Systems or navigational equipment.