JULIUS ROBERT SMITH, JR. AND WIFE, NANCY MULLINS SMITH v. CITY OF CHARLOTTE, A MUNICIPAL CORPORATION

No. 8526SC979

(Filed 4 March 1986)

1. **Eminent Domain § 13— applicability of N.C.G.S. Ch. 40A to private landowners**

    Even though private landowners are not specifically mentioned in N.C.G.S. 40A-3, they are bound by the provisions of Ch. 40A.

2. **Eminent Domain § 13— inverse condemnation**

    No general common law right of action for inverse condemnation exists where there is no underlying statutory condemnation authority.

3. **Aviation § 2; Eminent Domain § 13— airplane overflights—inverse condemnation—procedure provided by N.C.G.S. 40A-51**

    N.C.G.S. 40A-51 provides the sole procedure by which plaintiffs may bring an inverse condemnation action against a city for the alleged taking of their land resulting from the city's operation of its airport.

4. **Aviation § 2; Eminent Domain § 13— airplane overflights—inverse condemnation action—N.C.G.S. Ch. 40A—different procedures not allowed by city charter**

    A city charter amendment permitting a city to use the provisions of N.C.G.S. Ch. 136 to exercise its power of eminent domain did not give plaintiff landowners the right to use procedures other than those set forth in N.C.G.S. Ch. 40A in bringing an inverse condemnation action against the city based on airplane overflights.

5. **Limitation of Actions § 4; Aviation § 2; Eminent Domain § 13— inverse condemnation—enactment of statute of limitations—constitutionality of grace period**

    A grace period of five months and three weeks between enactment of the two-year statute of limitations of N.C.G.S. 40A-51 for inverse condemnation actions and the effective date of the statute afforded landowners a reasonable time within which to bring an action on an existing inverse condemnation claim so as to comply with due process.

6. **Aviation § 2; Eminent Domain § 13— inverse condemnation—claim barred by statute of limitations**

    Plaintiffs' claim filed on 23 November 1983 for inverse condemnation allegedly resulting from defendant city's opening of a new airport runway on 19 June 1979 was barred by the two-year statute of limitations of N.C.G.S. 40A-51.

7. **Aviation § 2— inverse condemnation—flight easement—additional taking from increased air traffic**

    Once a flight easement has been established, a further compensable taking may occur upon increases in operations or introduction of new aircraft within

the easement acquired with consequent decreases in land values significantly beyond the diminution resulting from the initial taking.

**8. Rules of Civil Procedure § 12— failure to state claim for relief—allowance of motion to dismiss**

A motion to dismiss for failure to state a claim for relief generally should not be allowed unless the pleadings disclose the absence of facts sufficient to make a good claim or some other insurmountable bar to recovery.

**9. Aviation § 2; Eminent Domain § 13— inverse condemnation action—allegation of date of taking**

The requirement of N.C.G.S. 40A-51 that a plaintiff in an inverse condemnation action state the dates of the alleged taking does not impose any stringent standard of specificity.

**10. Aviation § 2; Eminent Domain § 13— inverse condemnation—increase in air traffic—date of taking—remand for more definite statement**

Plaintiffs' complaint in an inverse condemnation action alleging the taking of a further flight easement "within the past two years" resulting from increased air traffic failed to allege with reasonable specificity when the alleged taking occurred. However, the complaint will not be dismissed but the cause will be remanded to permit plaintiffs to respond to defendant's motion under N.C.G.S. 1A-1, Rule 12(e) for a more definite statement.

APPEAL by plaintiffs from *Snepp, Judge.* Judgment entered 2 July 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 15 January 1986.

Plaintiff landowners, by complaint filed 23 November 1983, seek money damages for the alleged taking of their land resulting from defendant City's operation of its airport. The trial court dismissed their claims and they appeal.

Plaintiffs alleged that they are the owners of land in Mecklenburg County, near defendant's Charlotte/Douglas International Airport. On 19 June 1979 defendant opened a new runway, Runway 18R/36L. Aircraft using the new runway overfly plaintiffs' land at heights as low as approximately 100 feet. The overflights, plaintiffs allege, result in intense noise, vibration and pollution, greatly diminishing plaintiffs' enjoyment of their land and the value thereof.

Plaintiffs presented two claims for relief. In the first, they alleged a taking of their property beginning when Runway 18R/36L opened in June 1979. In their second claim, they realleged *verbatim* the first claim, simply changing the relevant dates from

"[s]ince June 19, 1979" to "[w]ithin the past two years," and adding that defendant allowed "substantially increased numbers" of aircraft to use the airport in that time. Plaintiffs claimed damages of $50,000 plus attorney fees. Plaintiffs filed a "Memorandum of Action" with the Register of Deeds, giving record notice of the action involving their property. The memorandum alleged that the taking occurred "at the opening of Runway 18R/36L with the taking of a further easement occurring within 2 years prior to the filing of the Memorandum and resulting from the substantial increase in flights over or near plaintiffs' property within the two years preceding the filing of this Memorandum."

Defendant responded by filing motions to dismiss pursuant to G.S. 1A-1, R. Civ. P. 12(b)(6) and for a more definite statement of when the taking alleged in plaintiffs' second claim occurred, G.S. 1A-1, R. Civ. P. 12(e). Defendant asserted the 24-month statute of limitations in G.S. 40A-51(a) as a defense. (G.S. Chapter 40A had been enacted in July 1981, 1981 N.C. Sess. Laws c. 919, and became effective 1 January 1982.) The trial court granted defendant's motion to dismiss both claims, with prejudice. Plaintiffs appeal.

*Weinstein, Sturges, Odom, Groves, Bigger, Jonas & Campbell, by L. Holmes Eleazer, Jr. and T. LaFontine Odom, for plaintiff-appellants.*

*Underwood, Kinsey & Warren, by C. Ralph Kinsey, Jr. and Kenneth S. Cannaday, for defendant-appellee.*

EAGLES, Judge.

G.S. Chapter 40A, urged by defendant as a bar to plaintiffs' first claim, became effective 1 January 1982. This lawsuit is one of 44 airport inverse condemnation actions filed against defendant after 1 January 1982. Defendant has filed similar motions to dismiss in each case. The parties in the other actions have stipulated to continuances pending the outcome of this appeal.

Numerous other actions involving takings occurring as a result of construction and operation of Runway 18R/36L have already reached the appellate courts. *See Long v. City of Charlotte,* 306 N.C. 187, 293 S.E. 2d 101 (1982); *Robinson v. City of Charlotte,* 306 N.C. 213, 293 S.E. 2d 117 (1982); *Bandy v. City of Charlotte,* 72

N.C. App. 604, 325 S.E. 2d 17, *disc. rev. denied*, 313 N.C. 596, 330 S.E. 2d 605 (1985); *Cochran v. City of Charlotte*, 53 N.C. App. 390, 281 S.E. 2d 179 (1981), *disc. rev. denied*, 304 N.C. 725, 288 N.C. 380 (1982).

I

We consider first the effect of G.S. 40A-51(a) as it relates to plaintiffs' first claim for relief. G.S. 40A-51(a) appears to bar as untimely all claims filed more than 24 months after "the date of the taking of the affected property or the completion of the project involving the taking, whichever shall occur later." *Id.* Plaintiffs' first claim alleges a taking occurring when Runway 18R/36L opened in June 1979. They did not file their lawsuit until November 1983. The statute, if applied literally, would bar the claim. Plaintiffs' arguments raise two decisive questions: (1) Does G.S. Chapter 40A provide the exclusive means for determining these inverse condemnation claims? (2) If so, may the time limit in G.S. 40A-51(a) be constitutionally applied to these plaintiffs?

A

Chapter 40A was enacted by the General Assembly in 1981 to revise and consolidate existing laws governing eminent domain. 1981 N.C. Sess. Laws c. 919, s. 1. The legislature expressly declared that the chapter's provisions provided the exclusive means of condemnation:

> It is the intent of the General Assembly that the procedures provided by this Chapter shall be the exclusive condemnation procedures to be used in this State by all private condemnors and all local public condemnors. All other provisions in laws, charters, or local acts authorizing the use of other procedures by municipal or county governments or agencies or political subdivisions thereof, or by corporations, associations or other persons are hereby repealed effective January 1, 1982. Provided, that any condemnation proceeding initiated prior to January 1, 1982, may be lawfully completed pursuant to the provisions previously existing.

G.S. 40A-1.

The cited language does not expressly state that Chapter 40A is the sole means for bringing inverse condemnation actions. The term "inverse condemnation" is not mentioned in the chapter but G.S. 40A-51, which provides for actions by private property owners where their property has been taken by governmental action without compensation, is clearly the relevant statute. Inverse condemnation is simply a device to force a governmental body to exercise its power of condemnation, even though it may have no desire to do so. *Hoyle v. City of Charlotte*, 276 N.C. 292, 172 S.E. 2d 1 (1970). It allows a property owner to obtain compensation for a taking in fact, even though no formal exercise of the taking power has occurred. *See City of Charlotte v. Spratt*, 263 N.C. 656, 140 S.E. 2d 341 (1965). G.S. 40A-51 provides the private property owner with a means to compel government action. If Chapter 40A provides the sole means for the City to condemn aviation easements over plaintiffs' land, it follows that plaintiffs' sole inverse condemnation remedy would lie under G.S. 40A-51.

### B

[1] Plaintiffs argue that because G.S. 40A-3 does not specifically mention private landowners, they are not limited to the statutory remedies of Chapter 40A. It has been established that they no longer have any private common law actions for damages in trespass or nuisance in municipal airport overflight cases; their sole remedy is inverse condemnation. *Long v. City of Charlotte, supra.* Plaintiffs' action here is not directly for money damages, but to compel the exercise of defendant's power of eminent domain, in which damages, if any, will be determined. G.S. 40A-51(a) ("The procedure hereinbefore set out . . . shall be followed for the . . . determination of just compensation."); G.S. 40A-47, -48, 40A-62 *et seq.* G.S. 40A-1 makes clear the legislative intent that defendant's exercise of its power of eminent domain, unless specifically excepted, should occur exclusively under the provisions of that chapter. Even though private landowners are not specifically mentioned in G.S. 40A-3, we hold that they are bound by the provisions of Chapter 40A.

### C

Some of the uncertainty on this issue arises from the discussion in *Long* of "common law" inverse condemnation actions. Defendant City is an agency created by the State, and has no

authority other than that granted by the legislature, either expressly or by necessary implication. *State v. Furio*, 267 N.C. 353, 148 S.E. 2d 275 (1966). Defendant may exercise its delegated right of eminent domain only as authorized to do so by statute or its charter. *Town of Mount Olive v. Cowan*, 235 N.C. 259, 69 S.E. 2d 525 (1952). If there is no legislative authorization, there is no power to condemn. *See State v. Core Banks Club Properties, Inc.*, 275 N.C. 328, 167 S.E. 2d 385 (1969). If an inverse condemnation action is only a procedure to compel the exercise of this statutory power, a "common law" inverse condemnation action could only be an action to compel its exercise where the statute, unlike G.S. Chapter 40A, did not establish such procedure.

[2] This was the result reached in *Long*: there the court defined a "common law" inverse condemnation action as interference with private property under color of legal authority *for a public purpose*. 306 N.C. at 199, 293 S.E. 2d at 109, *citing Penn v. Carolina Virginia Coastal Corp.*, 231 N.C. 481, 57 S.E. 2d 817 (1950). Public purpose is defined if at all by statute. *State v. Core Banks Club Properties, Inc., supra*. The *Long* court accordingly recognized a common law action arising out of the condemnation authority of G.S. Chapter 160A. The *Long* court did not, nor do we, recognize the existence of any *general* common law right of action where there is no underlying statutory condemnation authority.

D

Our interpretation is consistent with the interpretation of other statutory procedures governing inverse condemnation. In *Harwood v. City of Concord*, 201 N.C. 781, 161 S.E. 534 (1931), a street right-of-way case, the Supreme Court held that a statute providing for appraisal and assessment of damages and a right of appeal for street condemnation was the exclusive remedy for recovery by private landowners. The court affirmed a directed verdict that plaintiff take nothing in his common law action for damages. *See also* 1 Am. Jur. 2d Actions Sections 75-76 (1962). Similarly, in *Wilcox v. N.C. State Highway Comm.*, 279 N.C. 185, 181 S.E. 2d 435 (1971) the court affirmed a ruling that the two-year statute of limitations constituted a "complete defense" to the action for inverse condemnation, notwithstanding the fact that plaintiff had filed his action within the limitations periods set by other statutes of limitations.

E

One exception to this rule has been recognized in *Midgett v. N.C. State Highway Comm.*, 260 N.C. 241, 132 S.E. 2d 599 (1963). There the court relied on *Harwood* for the general proposition that the statutory remedy for recovery of damages for governmental takings is ordinarily exclusive. However, in *Midgett* flood damage to plaintiff's land occurred well after the statute of limitations had run. The statute then in effect provided that the limitation period commenced when the project in question was completed. No damage occurred at the time the highway was built, although injury was foreseeable then and plaintiff pointed this out to defendant. The court held that since plaintiff was constitutionally protected from the taking or *damage*, and no statute afforded him a remedy under that particular fact situation, he had a common law right of action. The key aspect of *Midgett*, absent here, is that plaintiff did not seek compensation for a permanent taking for a public use, but for *damages from a nuisance arising from public activity* adjacent to his land. The North Carolina cases cited in *Midgett* follow this logic: a statute of limitations for seeking compensation for a taking for a public purpose project would not apply to actions for negative nuisance damages. *Eller v. Bd. of Educ.*, 242 N.C. 584, 89 S.E. 2d 144 (1955); *City of Raleigh v. Edwards*, 235 N.C. 671, 71 S.E. 2d 396 (1952). *See Lea Co. v. N.C. Bd. of Trans.*, 308 N.C. 603, 304 S.E. 2d 164 (1983) (recognizing underlying nuisance theory).

The result of the *Midgett* case has since been incorporated into both G.S. 136-111 and G.S. 40A-51: the statutory time begins to run on completion of the project or the taking, *whichever is later*. Because of the statutory amendments, it is not clear that *Midgett* would apply today, even on identical facts, where a private landowner filed after expiration of the statutory period. The facts of this case clearly are distinguishable from *Midgett*: plaintiffs incurred damage beginning in 1979, by their own allegation. They offer no explanation for their delay in filing this action, nor does it appear legally excusable, in light of the ongoing nature of the airport operations.

[3] We note that the *Long* court expressly rejected any nuisance or trespass theory of recovery for interference with private property resulting from municipal airport operations. 306 N.C. at

196-98, 202 n. 9, 293 S.E. 2d at 108-9, 111 n. 9 [expressly disapproving contrary *dicta* in *Long v. Bond*, No. C-C-79-356 (W.D.N.C. March 18, 1980)]. For these reasons, we conclude that the *Midgett* exception does not apply here and that G.S. 40A-51 provides the sole procedure by which plaintiffs may bring their inverse condemnation action.

II

[4]   Plaintiffs point to a 1983 amendment to defendant's city charter which allows it to use the provisions of Article 9 of Chapter 136 of the General Statutes to exercise its eminent domain powers, notwithstanding the "exclusive remedy" provisions of G.S. 40A-1 (1983 N.C. Sess. Laws c. 437, s. 1). Plaintiffs argue that they should not be restricted to the procedures of Chapter 40A, since the city is not.

A similar contention was discussed in *Long*. There the court held that under the existing statutory structure, plaintiff property owners were not bound to use the statutory inverse condemnation procedures in G.S. 136-111. In rejecting defendant City's contention that plaintiffs were required to use the Chapter 136 procedure, the court relied on the provisions of G.S. 160A-243 and 160A-243.1. The court held that the separate provisions of Chapter 160A clearly contemplated a common law inverse condemnation action. 306 N.C. at 210-11, 293 S.E. 2d at 115-16.

Though *Long* was decided 13 July 1982, after the effective date of the present Chapter 40A, it dealt solely with the law existing in 1981 when the Longs' complaint was dismissed. The *Long* opinion does not discuss the effect, if any, of the new enactments. The permissive language of G.S. 160A-243, on which the *Long* court relied, was repealed when the "exclusive" provisions of Chapter 40A went into effect. 1981 N.C. Sess. Laws c. 919, s. 28. The provisions of Chapter 40A now control cities' eminent domain actions with respect to airports. G.S. 40A-3(b)(2); G.S. 160A-311(9).

We find nothing in the amendment to the charter suggesting restoration of the broad remedies allowed by *Long* under the pre-1981 statute. Rather, the charter amendment simply allows the City a single alternative procedure. That alternative procedure, including G.S. 136-111 and its two year limitation period,

is for all practical purposes the same as G.S. 40A-51. Accordingly, plaintiffs' position is not affected by the 1983 amendment to defendant's city charter.

## III

Plaintiffs contend next that G.S. 40A-51 is unconstitutional *as applied* to these particular facts. Plaintiffs argue that the enactment of the statute terminated their valid right to action without sufficient opportunity for them to exercise it. Both sides rely on *Flippin v. Jarrell*, 301 N.C. 108, 270 S.E. 2d 482 (1980), *reh'g denied*, 301 N.C. 727, 274 S.E. 2d 228 (1981).

### A

In *Flippin* the court recognized the general rule that the legislature may, without affecting vested interests, shorten or extend pre-existing periods of limitation. If the new limitation shortens the existing period, however, to comport with due process it must provide a reasonable "grace period" for filing actions which have accrued but have not been filed when the new limitation takes effect. *Id.* at 113, 270 S.E. 2d at 486. The *Flippin* court did not look merely at the statutory grace period, but also at the time between accrual of the action and the cutoff date under the new limitation. As *applied* in *Flippin* the statute allowed plaintiff only 39 days between accrual and the filing deadline. This was constitutionally insufficient, even though the time between passage of the amending act and its effective date was eight months.

Here, however, plaintiffs' first claim accrued in June 1979. Over two years later, in July 1981, the new Chapter 40A was enacted. 1981 N.C. Sess. Laws c. 919. Plaintiffs suffered no disability during that period, and could have filed their action at any time, as other local landowners did. *See Long* (complaint filed June 1980). Therefore the ultimate question presented in *Flippin*, of interval between accrual of the action and the new statutory cutoff date, does not arise. The only question is whether the period between enactment and the cutoff date, five months and three weeks (10 July 1981 to 1 January 1982), was itself so unreasonably short as to deny plaintiffs due process of law.

B

[5]   What constitutes a reasonable grace period generally is a legislative and not a judicial issue and the courts should not interfere unless the time allowed is so manifestly insufficient as to effectively deny justice. *Flippin, citing Barnhardt v. Morrison*, 178 N.C. 563, 101 S.E. 218 (1919). The *Flippin* court started with *Matthews v. Peterson*, 150 N.C. 132, 63 S.E. 722 (1909), in which a five month grace period between ratification and effect was approved. It then examined only cases in which grace periods less than five months were considered. 301 N.C. at 115-16, 270 S.E. 2d at 487-88. This focus on periods of five months or less suggests approval of that grace period as a constitutional minimum. *But see Blevins v. Northwest Carolina Utilities, Inc.*, 209 N.C. 683, 184 S.E. 517 (1936) (shortening limitation from twenty years to six months unreasonable). Courts of other jurisdictions have held periods of as little as thirty days reasonable. 51 Am. Jur. 2d, Limitation of Actions, Section 39 (1970).

In light of the stringent standard of review, the standard implicit in *Flippin*, and the fact that plaintiffs lived in an area where large numbers of inverse condemnation actions were filed within the statutory period, we cannot say that the five month grace period of 1981 N.C. Sess. Laws c. 919 is so unreasonable as to amount to a denial of justice.

IV

[6]   Having determined that the two year statute of limitations of G.S. 40A-51 (or G.S. 136-111) applies, that *Midgett v. N.C. State Highway Comm., supra*, does not relieve plaintiffs of the statute of limitations' effect, and that the five month grace period in 1981 N.C. Sess. Laws c. 919 comported with due process, we hold that plaintiffs' first claim was not timely filed and that the trial court correctly dismissed it.

V

We now consider plaintiffs' second claim, for a taking occurring within two years of the filing of their action as a result of alleged substantial increases in numbers of planes using the airport.

A

[7] Defendant raises the threat of recurring litigation if claims for such "additional takings" are allowed. It is true that once an easement is taken, the condemnor ordinarily enjoys the right to use it without incurring further liability to the landowners and successors. *Lea Co. v. N.C. Bd. of Trans., supra.* That insulation from further liability extends only to the "defined portion" of property actually taken, however. *Id.* at 625, 304 S.E. 2d at 179. We have recognized that once a flight easement has been established, further compensable takings may occur "upon increases in operations or introduction of new aircraft within the easements acquired with consequent decreases in land values significantly beyond the diminutions resulting from the initial takings." *Cochran v. City of Charlotte, supra,* 53 N.C. App. at 396, 281 S.E. 2d at 185. We relied in *Cochran* on *Avery v. United States,* 330 F. 2d 640 (Ct. Cl. 1964), in which the court rejected the government's contention that an aviation easement, once taken, extended to all types and quantities of aircraft and precluded recovery. In *Avery,* plaintiffs prevailed on their claim that the use of an air station as a training base, together with extension of runways, the introduction of heavy jet bombers and a sharp decrease in land values, combined to cause a new taking beyond that inherent in original use of the air station as a jet fighter base. *See also Adams v. United States,* 680 F. 2d 746 (Ct. Cl. 1982) (F-4 fighters stationed at existing base; finding of additional taking affirmed without discussion); *A. J. Hodges Industries, Inc. v. United States,* 355 F. 2d 592 (Ct. Cl. 1966) (introduction of B-52 bombers, twice as large as planes used formerly; additional taking). Our law clearly recognizes the concept of additional takings of aviation easements due to increases in air traffic.

The question before us now is a pleading question: Did plaintiffs allege an additional taking sufficient to withstand defendant's motion to dismiss?

B

[8] Detailed fact pleading is no longer required under our Rules of Civil Procedure. G.S. 1A-1, R. Civ. P. 8; *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970). Rule 8 did not remove all requirements of particularity, however; mere assertion of a grievance will not suffice, but the pleader must plead with sufficient

particularity to identify the legal issues and allow the other party to frame a responsive pleading. *Id.* A motion to dismiss for failure to state a claim for relief generally should not be allowed unless the pleadings disclose the absence of facts sufficient to make a good claim or some other insurmountable bar to recovery. *See Hodges v. Wellons,* 9 N.C. App. 152, 175 S.E. 2d 690, *cert. denied,* 277 N.C. 251 (1970). The policy behind the notice theory of the present rules is to resolve controversies on the merits, following opportunity for discovery, rather than resolving them on technicalities of pleading. *Sutton v. Duke, supra.* Consequently, our courts have exercised great restraint in ruling on the factual sufficiency of pleadings.

C

[9]    For the purposes of testing the timeliness of a complaint, averments of time and place are material. G.S. 1A-1, R. Civ. P. 9(f). This allows early consideration of statute of limitations defenses, which are appropriately raised by motions to dismiss. *Id.,* Comment; *see Fed. Deposit Ins. Corp. v. Loft Apartments Ltd. Partnership,* 39 N.C. App. 473, 250 S.E. 2d 693, *disc. rev. denied,* 297 N.C. 176, 254 S.E. 2d 39 (1979). We note also that G.S. 40A-51 specifically requires that a plaintiff in an inverse condemnation action state the dates of the alleged taking, although it does not require "particularity." *Compare* G.S. 1A-1, R. Civ. P. 9(b). When a taking occurs cannot always be determined with precision, however, particularly where as here the alleged taking at issue is additional to existing government interference with plaintiffs' property. No simple test exists for determining *when* a taking occurs by aircraft overflights; rather a particularized judgment of the facts of the individual case is necessary. *Jensen v. United States,* 305 F. 2d 444 (Ct. Cl. 1962). We therefore do not read the date requirement of G.S. 40A-51 to impose any stringent standard of specificity.

[10]    Nevertheless, what plaintiffs have done here, alleging a very general taking "within the past two years," would if allowed foreclose any testing of the sufficiency of the complaint, effectively depriving defendant of its remedies under Civ. P. 12. This should not be permitted. *Compare Fed. Deposit Ins. Corp. v. Loft Apartments Ltd. Partnership, supra* (complaint alleged action arising after statutory cutoff date, but only 25 days possible

overlap; sufficient). Our Supreme Court has recommended before that plaintiffs, in this type of action, should "allege with reasonable specificity when the alleged appropriation or taking occurred." *Hoyle v. City of Charlotte, supra*, 276 N.C. at 306, 172 S.E. 2d at 10.

## D

We do not believe, however, that total dismissal of the complaint was the proper remedy. Defendant made a motion for a more definite statement. G.S. 1A-1, R. Civ. P. 12(e). Rather than dismissing the complaint altogether, the court should have required plaintiffs to come forward and plead the facts they possessed. The court could then rule on their timeliness and sufficiency. We reached a similar result in *Schloss Outdoor Advertising Co. v. City of Charlotte*, 50 N.C. App. 150, 272 S.E. 2d 920 (1980). There we held that a conclusory statement that defendant city "cut down and removed" a sign sufficed to state a claim in inverse condemnation. Mere vagueness of the complaint did not entitle defendant to dismissal, but rather should have been tested by a Rule 12(e) motion. We note that motions for a more definite statement may frequently be interposed for delay, *see Ross v. Ross*, 33 N.C. App. 447, 235 S.E. 2d 405 (1977), and should be scrutinized with care. Nevertheless, this appears to be an appropriate case for allowing a Rule 12(e) motion.

Practice under the similar provisions of the federal rules supports this result. Fed. R. Civ. P. 9(f); Fed. R. Civ. P. 12(e).

Ordinarily, motions under Rule 12(e) are not favored because of their dilatory effect. But if the motion will expedite the determination of a case, by compelling the plaintiff to more precisely plead matters which may determine whether the action is vulnerable to a *motion to dismiss*, it should be favored.

2A J. Moore, Moore's Federal Practice Section 12.18[4] (2d ed. 1985). *See also* 5 C. Wright & A. Miller, Federal Practice & Procedure: Civil Section 1376 at 743-45 (1969).

## E

While absolute precision in pleading is not necessary, plaintiffs may not simply state a generalized grievance and thereby

gain the right to go on a discovery fishing expedition. As they demonstrated in oral argument, they do have some knowledge of specific facts as to when the alleged additional taking occurred. On remand, they should respond to the Rule 12(e) motion with whatever clarity they can, listing the relevant dates and changes in circumstances constituting the alleged taking. The court may then rule on the timeliness and factual sufficiency of the complaint. On this record, however, a ruling would be premature.

## CONCLUSION

The court ruled correctly in dismissing plaintiffs' first claim as barred by the statute of limitations. As to the second claim, however, dismissal was inappropriate and that portion of the order is reversed and remanded. Subsequent proceedings shall be consistent with this opinion and our Rules of Civil Procedure.

Affirmed in part; reversed and remanded in part.

Judges MARTIN and COZORT concur.