**ASHLEY PARK CHARLOTTE ASSOCIATES, Plaintiff,**

v.

**CITY OF CHARLOTTE, NORTH CAROLINA, Defendant,**

Nationsbank of Virginia, N.A. f/k/a Sovaran Bank, N.A., and Bessemer Improvement Company, Interested Parties.

No. C–C–90–395–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

June 8, 1993.

---

1224

Michael D. Meeker, Mack Sperling, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, for plaintiff.

Ashley Park Charlotte Associates, pro se, c/o James B. Farinholt, Jr., Galleher Inv. Co., Richmond, VA.

Benne C. Hutson, Smith, Helms, Mulliss & Moore, Charlotte, NC, for City of Charlotte, N.C.

Gregory J. Murphy, Moore & Van Allen, James C. Smith, Moon Rayburn & Smith, George V. Hanna, III, Robert D. Dearborn, Moore and Van Allen, Charlotte, NC, Robert D. Seabolt, Mays & Valentine, Richmond, VA, for Sovran Bank, N.A.

George V. Hanna, III, Moore and Van Allen, Charlotte, NC, Robert D. Seabolt, Mays & Valentine, Richmond, VA, Nationsbank of Virginia, N.A.

Jonathan S. Dills, Tuggle, Duggins & Meschan, P.A., Michael D. Meeker, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, for Bessemer Improvement Co.

## ORDER

ROBERT D. POTTER, District Judge.

**THIS MATTER** is before the Court on Motion of the City of Charlotte (the "City" or "Charlotte"), originally filed April 13, 1992. Charlotte filed a Restated Motion for Summary Judgment on July 17, 1992. Ashley Park Charlotte Associates ("Ashley Park") filed responses on April 27, 1992 and August 3, 1992. Charlotte filed a reply on August 12, 1992.

### BACKGROUND

Ashley Park has sued Charlotte for environmental contamination of an approximately 28–acre parcel of real estate located on South Tryon Street and Tyvola Road Extension in Charlotte, North Carolina (the "Ashley Park Property"). Ashley Park has alleged causes of action based on federal and state law. The motion for partial summary judgment addresses only the state-law claims. The state-law claims include inverse condemnation, nuisance, trespass, negligence, and strict liability.

Ashley Park bought the Ashley Park Property in September of 1988. Ashley Park intended to develop a multi-family apartment complex on the Property. From 1968 until 1986, the City had operated a public use landfill on an adjacent piece of property across South Tryon Street from the Ashley Park Property (the "Landfill"). A multi-use recreational facility now occupies the Landfill. Ashley Park alleges that various substances (primarily methane) have migrated from the Landfill into the Ashley Park Property thus contaminating the soil and the groundwater on the Property.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of

law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. *Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see* Fed.R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). When considering motions for summary judgment, courts must view facts and inferences in the light most favorable to the party opposing the motion for summary judgment. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. at 1356; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational fact-finder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

### DISCUSSION

In addition to challenging each claim on the merits and on the statute of limitations, the City has also raised a threshold issue, to-wit: whether North Carolina's inverse condemnation statute, N.C.Gen.Stat. 40A–51, preempts Ashley Park's other state-law claims. The City relies on *Long v. City of Charlotte,* 306 N.C. 187, 293 S.E.2d 101 (1982), and *McAdoo v. City of Greensboro,* 91 N.C.App. 570, 372 S.E.2d 742 (1988), to support its position.

In *Long,* the North Carolina Supreme Court held that inverse condemnation was a landowner's exclusive means to recover for putative flight path easements. 306 N.C. at 197, 293 S.E.2d 101. The Court specifically rejected the landowner's claims of nuisance and trespass.

Ashley Park argues that *Long* does not apply because it was decided based on the law prior to the passage of the inverse condemnation statute. *See* N.C.Gen.Stat. § 40A–51. The inverse condemnation statute, N.C.Gen.Stat. § 40A–51, establishes a procedure by which a party essentially may compel a municipality to condemn property. Subsection (c) of the statute appears to reserve certain unspecified common-law rights for landowners: "Nothing in this section shall in any manner affect an owner's common-law right to bring an action in tort for damage to his property." N.C.Gen.Stat. § 40A–51(c). The North Carolina Court of Appeals, however, subsequently held that that language in the statute was irrelevant. *McAdoo,* 91 N.C.App. 570, 372 S.E.2d 742, *Smith v. City of Charlotte,* 79 N.C.App. 517, 339 S.E.2d 844 (1986).

Unlike *Long,* both *McAdoo* and *Smith* were decided under the inverse condemnation statute that applies to this case. In *McAdoo,* the Court upheld the trial court's grant of summary judgment as to a trespass claim. 91 N.C.App. at 573, 372 S.E.2d 742. The Court reasoned that summary judgment was appropriate because,

> ... defendant as a city had the power of eminent domain, and such power insulates it from trespass actions regardless of whether compensation was paid or proper procedures were used. The exclusive remedy for failure to compensate for a "taking" is inverse condemnation under G.S. 40A–51. *See Long v. City of Charlotte,* 306 N.C. 187, 293 S.E.2d 101 (1982); *Smith v. City of Charlotte,* 79 N.C.App. 517, 339 S.E.2d 844 (1986). The fact that G.S. 40A–51(c) provides that "nothing in this action [sic] shall in any manner affect an owner's common-law right to bring an action in tort for damage to his property" is not relevant. An owner has no common-law right to bring a trespass action against a city.

*Id.* The *Smith* Court held that the landowners, who alleged a taking by virtue of airplane takeoff and landing noise, were bound by the provisions of the condemnation statute, Chapter 40A of the North Carolina General Statutes. 79 N.C.App. at 521, 339 S.E.2d 844. Thus, the Court concluded that

the inverse condemnation provision, N.C.Gen.Stat. § 40A–51, provided the landowners' only remedy for alleged damage in the nature of a "taking." *Id.* at 524, 339 S.E.2d 844.

Accordingly, the Court will grant summary judgment as to Ashley Park's state, common-law claims for nuisance, trespass, and negligence. The Court, however, will not grant summary judgment as to Ashley Park's strict liability claim.

■ Ashley Park's strict liability claim is based on the North Carolina Oil Pollution and Hazardous Substances Control Act of 1978 (the "Oil Pollution Act"). The Oil Pollution Act imposes strict liability on parties for unauthorized discharge of hazardous substances within their control. Unlike the common law claims, none of the cases upon which the City relies addresses whether the inverse condemnation statute bars other *statutory* claims. *See Long v. City of Charlotte,* 306 N.C. 187, 293 S.E.2d 101 (1982), *McAdoo v. City of Greensboro,* 91 N.C.App. 570, 372 S.E.2d 742 (1988), and *Smith v. City of Charlotte,* 79 N.C.App. 517, 339 S.E.2d 844 (1986).

Ashley Park argues that the inverse condemnation statute does not preempt the Oil Pollution Act because the Oil Pollution Act addresses a more specific issue. *See Whittington v. North Carolina Dep't of Human Resources,* 100 N.C.App. 603, 606, 398 S.E.2d 40 (1990) (finding that "when one statute speaks directly and in detail to a particular situation, that direct, detailed statute will be construed as controlling other general statutes regarding that particular situation, absent clear legislative intent to the contrary."). This argument—which relies on a standard rule of statutory construction—is not very helpful in this case. Neither of these two statutory schemes may be described as "more specific" than the other. Each statute deals with an entirely different subject matter.

The Court is also unaware of any legislative history that might prove helpful. With little guidance from the state courts, the statutes themselves, the legislative history, or the rules of statutory construction [1] the Court has the unenviable task of predicting how the North Carolina Courts would answer this question.

The inverse condemnation statute is an appropriate starting point. The legislature could have specifically preempted any other statutory claims in cases in the nature of inverse condemnation. The Court must presume that the legislature was fully aware of the Oil Pollution Act. *Whittington,* 100 N.C.App. at 606, 398 S.E.2d 40 ("[Court] must presume that the legislature acted with full knowledge of prior and existing law."). This presumption indicates that the legislature simply chose not to preempt other statutory claims.

Preemption of the Oil Pollution Act would also not make sense because a landowner might not be able to show a "taking" but might still be able to demonstrate violation of the Oil Pollution Act. This possibility results from the nature of a "taking." Not all damage to property or interference with rights of property ownership will result in a "taking;" hence, not all damage to property is compensable under the inverse condemnation statute. Under the Oil Pollution Act, however, the landowner may recover for any damage to his property. N.C.Gen.Stat. § 143–215.93. The party in violation of the Oil Pollution Act may also be compelled to clean up the discharge(s). A condemnor is liable only for the diminution in the landowner's property.

Lastly, the Court believes that the inverse condemnation provisions do not preempt the Oil Pollution Act because the two statutes serve different remedial goals. The purpose of inverse condemnation is merely to assure that no public or private condemnor is allowed to take property without providing just compensation. The Oil Pollution Act is not as concerned with the rights of individual property owners as it is with the health, safety, and welfare of all the citizens of North Carolina. N.C.Gen.Stat. § 143–215.76. The Court therefore believes that Ashley Park is entitled to pursue the strict liabil-

---

1. The Court would consider certification of this issue to the North Carolina Supreme Court, but North Carolina unfortunately has no such option.

ity claim along with the inverse condemnation claim.

■ The City next argues that the statutes of limitations bar the inverse condemnation and the strict liability claims. The Court will address the statutes of limitations for these two claims *seriatim*. The inverse condemnation provision provides a two-year statute of limitations. N.C.Gen.Stat. § 40A–51(a). Specifically the statute provides in pertinent part that an inverse condemnation action, "... may be initiated within 24 months of the date of the taking of the affected property...." The question of when the taking has occurred is, of course, the only issue that the Court need resolve to address to apply the statute of limitations.

The issue of whether (or when) a "taking" has occurred is intensely factual. Even though the "taking" question is an issue for the Court, *Raleigh–Durham Airport Authority v. Howard*, 88 N.C.App. 207, 215–216, 363 S.E.2d 184 (1987), that does not dictate that the Court should be inclined to grant summary judgment.

The *Long* Court held that a taking was a "substantial interference with elemental rights growing out of ownership of property" 306 N.C. at 199, 293 S.E.2d 101. The landowner who alleges inverse condemnation must demonstrate "an actual interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental." *Id.* The landowner must demonstrate that the alleged exercise of the right of eminent domain "injuriously [affects the property] in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof." *Id.* (citation omitted).

The question of when a "substantial interference" with property rights begins will very seldom be an appropriate issue to determine at the summary judgment stage in a case such as this. The evidence indicates that some methane will not render property useless or undevelopable. The level of methane must accumulate to 5% by volume before it becomes explosive. Unless and until it reaches explosive levels, methane presents no significant danger.

Although there is evidence that there may have been some methane migration on the Ashley Park Property as early as 1984, there is very little evidence as to the exact amount of methane on the property prior to Ashley Park's purchase of the property on September 29, 1988.[2] Various reports after November of 1987 indicate the presence of explosive levels of methane in the soil on the Ashley Park Property, none of the reports indicate that the Property is completely contaminated with methane. Considered in the light most favorable to Ashley Park, the reports generally indicate that methane at explosive levels, that is, dangerous levels, existed only on a small portion of the Ashley Park Property prior to November 27, 1988. The evidence further indicates that methane accumulates and may dissipate over time as it vents out of the subsurface soil.

Viewed in the light most favorable to Ashley Park, this evidence gives rise to an inference that additional "takings" may have occurred or be occurring on an almost daily basis. This case is not like a right-of-way condemnation in which the date and extent of taking is easily ascertainable. This case is somewhat analogous to a flight path easement case in which the use of the easement increases. *See Smith*, 79 N.C.App. at 527, 339 S.E.2d 844. In *Smith*, the Court found that even though the City had already paid for a flight path or aviation easement, additional takings could occur due to increases in the quantity of air traffic or changes in the type of air traffic, *e.g.*, propeller versus jet-driven aircraft.

Accordingly, due to the "ebb and flow" nature of the alleged environmental contamination which leaves the date of the "taking" (if any) in dispute, the Court will deny the motion for summary judgment as to the inverse condemnation claim.

---

**2.** One of the 1984 reports (upon which the City relies) indicates that no methane is detectable more than fifteen feet from South Tryon Street. The inference in the light most favorable to *the*  *City* would indicate that only the first fifteen feet of the property has been "taken." Most of that property probably falls within the right-of-way for South Tryon Street.

The City makes the same statute of limitations argument as to the strict liability (Oil Pollution Act) claim. The Court believes that summary judgment is also not appropriate as to this claim. The evidence in this case indicates that the City's Landfill may have released methane and other pollutants over a long period of time. Although the statute of limitations has run as to any discharges released and discovered prior to November 27, 1987, the City's own evidence indicates that the Landfill is still discharging methane. As such, there is no question that the statute of limitations does not bar Ashley Park's strict liability claim *in toto.* The Court will deny summary judgment as to the strict liability claim.

**NOW, THEREFORE, IT IS ORDERED** that the City's motion for summary judgment be, and hereby is, **GRANTED** as to the claims for nuisance, trespass, and negligence (claims 5–7 of the Amended Complaint) and is otherwise **DENIED.**